THE BARRACOUTA.[1]

UNITED STATES *v.* THE BARRACOUTA.

(*District Court, E. D. New York.* April 9, 1890.)

CUSTOMS DUTIES—INCOMING VESSELS—OBSTRUCTING BOARDING OFFICER.

Where it was proved that the steam-ship B., on entering the Bay of New York, was signaled by the revenue cutter to slacken her speed, in order that a boarding officer might be put aboard of her, but that the B. did not slacken her speed, but continued to increase the distance between herself and the cutter, until the latter sheered off, and that during this time the master of the B. was on the bridge, it was *held*, on proceedings brought against the B. by the government, under sections 3068, 3088, Rev. St., that the action of the B. was a hindering and obstruction to the boarding officer, within the meaning of the statute, and that the vessel should be fined $250.

In Admiralty.

*Jesse Johnson*, U. S. Dist. Atty., for libelant.

*Wing, Shoudy & Putnam* and *C. C. Burlingham*, for claimant.

BENEDICT, J. This is a proceeding against the steam-ship Barracouta, taken under the provisions of law contained in sections 3068 and 3088 of the Revised Statutes. In order to maintain the action it is necessary for the government to show that the master of the Barracouta, on the day of her arrival in the Port of New York, in the month of September last, obstructed or hindered, or intentionally caused an obstruction or hindrance to, the custom-house officer in his effort to board the steam-ship for the purpose of carrying into effect the revenue laws of the United States. In support of the prosecution the government has proved that on the day in question the revenue officers were on board of the revenue cutter in the lower bay for the purpose of boarding incoming vessels; the Barracouta, then moving up the bay, being one of

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

them. In order to enable the revenue officer to board the Barracouta, it was necessary for her to slacken her speed, and she was signaled by the cutter to do so. The cutter was at this time proceeding towards the Barracouta, for the purpose of putting the officer on board, and her character and mission was made evident to those on board the Barracouta. The Barracouta, instead of heeding the signal from the cutter, kept up her speed, and, although repeatedly signaled from the cutter, continued to increase the distance between herself and the cutter. Finally the cutter, after having followed the steam-ship some five minutes without observing any slackening of the steam-ship's speed, abondoned the chase, and turned back to put officers on board other steam-ships below. These facts make a case of hindering and obstruction to the boarding officer, within the meaning of the statute. The statute, however, is confined by its terms to the master of the vessel. Accordingly it became necessary for the government to make it appear that the master of the Barracouta was in control of her movements at the time when she steamed away from the cutter. In behalf of the government two witnesses are produced from the cutter, who positively testify that at the time the Barracouta was steaming away from the cutter they saw the master of the Barracouta on the bridge of the steamer, looking at the cutter as she was pursuing. At this time the pilot, the third officer, and a quartermaster were on the bridge of the Barracouta, and the case turns upon the question whether the master also was there. The pilot is produced as a witness for the steamer. He testifies that he thinks the master was not on the bridge at the time; but his manner on the stand was not assuring, and his testimony furnishes little satisfactory evidence upon the point in issue. The deposition of the master was also read in behalf of the steamer. He testifies that he went below to a water-closet, and remained there some 15 minutes after the steamer passed the Narrows; and he evidently desires to afford ground for an inference that he was below at the time when the cutter was in pursuit. But the master nowhere states that he was below at the time of the cutter's pursuit, and his deposition when examined discloses facts which point to the conclusion that he did not leave the bridge to go to the closet until after the cutter had abandoned the chase. Moreover, the master, when afterwards charged by the commander of the cutter with having steamed away from the cutter, made no denial of the charge, but said nothing; leaving it to the pilot to assert that the master was not on the bridge. Furthermore, neither the third officer nor the quartermaster, who were on the bridge, are called as witnesses, nor is the absence of their testimony accounted for. This state of the testimony leaves the decided weight of the evidence in favor of the assertion of the government that the master of the Barracouta was on the bridge of his steamer at the time when she steamed away from the cutter. The master, if upon the bridge, was responsible for the movements of his vessel, and his refusal to permit the officer to board her renders his steamer liable under the statute. Let the steamer be condemned to pay the sum of $250, with costs.