## FISH v. BROPHY.

District Court, S. D. New York.
May 15, 1931.

Caruthers Ewing, of New York City, for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for defendant.

KNOX, District Judge.

This is a motion to strike out affirmative defenses for failure to state facts constituting a defense to this action.

The gist of the action is that defendant stopped plaintiff's pleasure boat in New York Bay, boarding and searching it without a search warrant, and in the absence of probable cause to believe that the boat was being used in violation of the law. The complaint sets forth causes of action for false imprisonment, assault, and unlawful search. Defendant admits he stopped, boarded, and searched the boat, but seeks to justify his action on the ground that he was a Customs Guard acting "solely in the performance of his official duties." He avers he had not theretofore seen plaintiff's boat, and that it was a vessel which never before had appeared in the waters of New York Harbor;

that it had failed to stop when ordered and signaled so to do; that at the time he stopped the boat he was under orders to stop and search all motor vessels traveling in the direction in which plaintiff's boat was headed; and that he used no more force than was necessary to stop the vessel, and to compel plaintiff to permit the search.

Defendant contends that the foregoing facts, if established, constitute "probable cause," and that, in any event, the existence of "probable cause" was not necessary to justify the search.

As stated in Dumbra v. United States, 268 U. S. 435, 441, 45 S. Ct. 546, 548, 69 L. Ed. 1032: " 'Probable cause' has been defined by this court as 'reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged.' Stacey v. Emery, 97 U. S. 642, 645, 24 L. Ed. 1035. Under the foregoing definition, it is apparent that the affirmative allegations on which defendant relies cannot be properly said to have warranted a belief that plaintiff was engaged in an unlawful enterprise.

The basis of defendant's further contention that statutes of the United States authorized his action is to be found under section 581 of the Tariff Act of 1922, 42 Stat. 979 (19 USCA § 481). That section provides that such an officer "may at any time go on board of any vessel or vehicle at any place in the United States or within four leagues of the coast of the United States ⸱ * * to examine the manifest and to inspect, search, and examine the vessel or vehicle, and every part thereof, and any person, trunk, or package on board, and to this end to hail and stop such vessel or vehicle, if under way, and use all necessary force to compel compliance. * * * "

This section of the Tariff Act was before the court in Awalt v. United States, 47 F.(2d) 477, 478 (C. C. A. 3d), and it was there said: "Section 581 of the Act of September 21, 1922 (42 Stat. 858 [19 USCA § 481]) relating to 'Boarding Vessels,' authorizes officers of the Coast Guard to go on board of any vessel at any place within the United States or within four leagues of the coast thereof 'to examine the manifest and to inspect, search, and examine the vessel * * * and every part thereof, and any person, trunk, or package on board,' etc., without the necessity of establishing probable cause or procuring a search warrant. Arch et al. v. United States

(C. C. A.) 13 F.(2d) 382; Maul v. United States, 274 U. S. 501, 529, 530, 47 S. Ct. 735, 71 L. Ed. 1171." The actual holding of the case, however, was that the admission of the vessel's captain to a coast guard that his vessel was loaded with liquor constituted "probable cause" justifying search of the vessel without a warrant.

In Arch v. United States, 13 F.(2d) 382 (C. C. A. 5th), it was held that a Coast Guard had authority to search a vessel without a warrant after finding no manifest when boarding her for inquiry as to cargo and destination, when the vessel was anchored within the twelve-mile limit, even though it was beyond the three-mile limit. The court said, at page 383 of 13 F.(2d): "Some of the material facts conclusively shown by the record are these: The Island Home had been engaged in rum running for about one year and a half before her seizure, coming directly to the coast of the United States from some point in the British West Indies, and there unloading her cargo into small boats, keeping without the three-mile limit. On November 23, 1923, she was observed sailing off the coast of Texas not far from Galveston, presumably looking for a convenient anchorage. She came within the three-mile limit on this trip, but subsequently anchored outside of it, although well within twelve miles of the coast. The day after she anchored two small boats were sighted coming from her direction and about half way between the vessel and the shore. A Coast Guard cutter went out to her, and the officer in command discovered that she was loaded with liquor and did not have a manifest. Apparently part of the cargo had been discharged. Thereupon she was seized and brought into Galveston." At page 384 of 13 F.(2d), the court said: "When the Coast Guard observed her at anchor they had the authority to board her for the purpose of making inquiry as to her cargo and destination, and, finding no manifest, had the right to search without the necessity of procuring a search warrant. Tariff Act of Sept. 21, 1922, § 581 (Comp. St. Ann. Supp. 1923, § 5841h [19 USCA § 481]); Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. Finding probable cause therefor, the seizure was justified."

It thus appears that the previous history of the vessel in the last-mentioned case gave reasonable grounds for suspecting a violation of law and the court expressly stated there was probable cause justifying the seizure.

In Maul v. United States, 274 U. S. 501, 47 S. Ct. 735, 71 L. Ed. 1171, it was held that

officers of the Coast Guard were authorized to seize an American vessel subject to forfeiture for violation of the revenue laws, even though it was on the high seas more than twelve miles from the coast. The question before the court was whether section 581, 42 Stat. 979, limited the authority of the Coast Guard officers to seizure within the twelve-mile limit. The court declared their authority was not so limited, and that it extended to American vessels on the high seas, by virtue of section 3072 of the Revised Statutes (19 USCA § 506). Justices Holmes and Brandeis concurred in a separate opinion, upon the ground that the Coast Guard has implied power to seize American vessels anywhere on the high seas, for the violation of any law of the United States. Neither of the opinions discusses or is based upon the question of "probable cause."

These decisions fail to substantiate defendant's contention that it was unnecessary for him to have "probable cause" to justify the search in the instant case.

In Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381, the defendants were arrested near the Canadian border, their automobile searched without a warrant, and intoxicating liquor found therein was seized. The court found that a case of "probable cause" was not made out and that, therefore, the admission in evidence of the seized liquor in a prosecution under the National Prohibition Act (27 USCA) violated the Fourth and Fifth Amendments.

In Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, the court held, Justices McReynolds and Sutherland dissenting, that probable cause existed where prohibition officers. searched an automobile upon the faith of information previously obtained by them that the car and its occupants, identified by the officers, were engaged in "bootlegging." But the court emphatically pointed out that a search was not justified in the absence of probable cause, saying at pages 153, 154 of 267 U. S., 45 S. Ct. 280, 285:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, *motor boat,* wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. [Italics mine.]

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made.

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. * * *

"It follows from this that, if an officer seizes an automobile or the liquor in it without a warrant, and the facts as subsequently developed do not justify a judgment of condemnation and forfeiture, the officer may escape costs or a suit for damages by a showing that he had reasonable or probable cause for the seizure. Stacey v. Emery, 97 U. S. 642, 24 L. Ed. 1035. The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

Section 581 of the act of 1922, title 19, USCA, § 481, undoubtedly gave defendant the right to stop boats in New York Harbor to examine their manifests. But manifests are required only in the case of vessels "arriving in the United States" with cargo from foreign ports. Section 431 of the act of 1922, 42 Stat. 950, title 19, USCA, § 241. See, also, section 2806, Rev. St., which provided that no goods shall be brought *into the United States from any foreign port* unless the master has on board *manifests* of the cargo. It would thus appear that section 581 applies only to vessels arriving in or bound for the

United States and carrying goods or persons from foreign ports. In the instant case, defendant states no facts which would justify a belief that plaintiff's boat, a pleasure craft, was carrying a cargo from a foreign port into the United States. It is hard to believe that the Legislature intended, in section 581, to place private pleasure boats in the same position as vessels importing cargo into the United States. In my opinion, plaintiff was entitled to the same constitutional protection in the operation of his motorboat as were the defendants in Gambino v. United States, and Carroll v. United States, supra.

In the light of these authorities, and on the pleadings as they now stand, and without reference to any other facts that may be alleged, or to statutes that may be pertinent thereto, the search of plaintiff's vessel was without lawful justification. For the foregoing reasons, the defenses contained in paragraphs 4, 5, 6, 7, 8, 13, and 19 state no facts constituting a defense to this action, and will be stricken from the answer.