## THE ATLANTIC.

### OLSON v. UNITED STATES.
### No. 232.

Circuit Court of Appeals, Second Circuit.
Dec. 18, 1933.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Alfred C. McKenzie, Asst. U. S. Attys., both of

Brooklyn, N. Y., of counsel), for the United States.

S. Morris Greenberg, of New York City (Robert B. Watts and Brown, Brenton & Watts, all of New York City, of counsel), for petitioner.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The petition filed herein set forth that the appellee's vessel, Atlantic, with a cargo of sacks of assorted intoxicating liquors, was proceeding in Jamaica Bay, September 20, 1933, when it was hailed by the United States Coast Guard, stopped, and searched, and then seized in violation of law. The seizing officer stated in his affidavit that he left Rockaway in a boat of the Coast Guard, at 8 p. m. September 20, 1933, and patrolled Jamaica Bay and Rockaway Inlet. At 8:30 p. m. he observed the Atlantic heading in his direction. He threw a searchlight upon her and noticed that her water line did not show; that she was heavy in the water. He sounded a horn for her to stop, and she did not stop. He came alongside and boarded her while both boats were under way. He detected a strong odor of alcohol, and stated his familiarity with such smell. The appellee was on board. He entered the pilot house and demanded the ship's papers, and noticed in the engine room, from which he had detected the smell of alcohol coming, what appeared to be a number of cases. He also discovered some 450 sacks filled with contraband liquors. The vessel was taken into custody, and the chemical examination of the cargo revealed contraband liquor. The crew were arraigned on the criminal charge of conspiracy to violate section 593 of the Tariff Act of 1930 (19 USCA § 1593) by smuggling contraband intoxicating liquors.

The appeal presents the question whether this was a lawful search and seizure or did it violate the Fourth and Fifth Amendments of the Constitution.

Section 581 of the Tariff Act of 1930 (19 U. S. C. § 1581 [19 USCA § 1581]) provides for boarding vessels. By its terms, officers of the Customs or the Coast Guard "may at any time go on board of any vessel or vehicle at any place in the United States or within four leagues of the coast of the United States, without as well as within their respective districts, to examine the manifest and to inspect, search, and examine the vessel or vehicle, and every part thereof, and any person, trunk, or package on board, and to this end to hail and stop such vessel or vehicle, if under way, and use all necessary force to compel compliance, and if it shall appear that any breach or violation of the laws of the United States has been committed, whereby or in consequence of which such vessel, or vehicle, or the merchandise, or any part thereof, on board of or imported by such vessel or vehicle is liable to forfeiture, it shall be the duty of such officer to make seizure of the same, and to arrest * * * any person engaged in such breach or violation."

By section 3061 of the Revised Statutes (19 U. S. C. § 482 [19 USCA § 482]) officers authorized to search vessels may stop, search, and examine an automobile or other vehicle within the limits of the United States when they have reasonable cause to suspect there is merchandise concealed in the vehicle which was imported contrary to law, but, in so far as officers are concerned, section 581 of the Tariff Act 1930 is primarily for boarding and searching of the vessel, and consequently, if the search reveals a violation of the law, the searching officer may seize the merchandise and vessel. Maul v. United States, 274 U. S. 501, 47 S. Ct. 735, 71 L. Ed. 1171; Wood v. United States, 16 Pet. (41 U. S.) 342, 10 L. Ed. 987; Awalt v. United States, 47 F.(2d) 477 (C. C. A. 3); Alksne v. United States, 39 F.(2d) 62 (C. C. A. 1). The authorization of section 581 is to ascertain whether there are any dutiable articles concealed in the vessel; it is not to discover acts of criminality. If by chance contraband merchandise or dutiable articles are discovered, then the Coast Guard officer must arrest any person connected with the smuggling of such merchandise. Section 2765 of the Revised Statutes (14 U. S. C. § 68 [14 USCA § 68]) authorizes officers of the Coast Guard to fire at or into any vessel which is liable to examination and does not stop. Section 2761 of the Revised Statutes (14 U. S. C. § 70 [14 USCA § 70]) directs the commanding officer of any Coast Guard cutter to make a return specifying the vessels boarded, whether laden or in ballast, and whether such vessels have the necessary manifests for cargo on board. Nor is this right of stoppage and search confined to commercial vessels. It also applies to vessels that might be classified as "private" or "pleasure." Section 103 of title 46, United States Code (46 USCA § 103), which provides for the licensing of pleasure yachts, provides that such vessel shall not be allowed to transport merchandise or carry passengers for hire. Section 106 of title 46, United States Code (46 USCA § 106), provides that every yacht except those of 15 gross tons or under shall on

her return to the United States from a foreign country make due entry at the custom house of the port in which she arrives, and the master in charge of the yacht must report any dutiable articles brought in on his vessel and must deliver a manifest for these articles. Section 107 of title 46, United States Code (46 USCA § 107), provides that no licensed yacht shall engage in any trade or in any way violate the revenue laws of the United States. Thus it is clearly intended that pleasure yachts, although considered in a class by themselves, were subject to examination in the same manner as any other vessel under section 581 of the Tariff Act 1930. The manner in which the coastwise vessels licensed for any purpose must carry manifests are set forth in sections 296–301 of title 46, U. S. Code (46 USCA §§ 296–301). It is the duty of officers of the Coast Guard to observe all restraints established by the health laws of the United States respecting vessels arriving at port, and they are obliged to aid in the execution of the health law. 42 U. S. C. § 97 (42 USCA § 97).

Thus, in order to effectuate the provisions of the navigation and tariff laws and to protect the revenue of the United States, Congress, by section 581 of the Tariff Act 1930, enables officers of the Coast Guard to board and search any vessel within the territorial waters of the United States in order to examine the vessels for identification and discover whether they have arrived from a foreign port and to see that they observe the quarantine and health laws and, comprehensively, all the laws of the United States. The authority to prohibit foreign vessels from entering the ports of this nation was upheld in Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306, where the Supreme Court said that Congress could regulate the navigation of domestic vessels upon the high seas, from which it would follow that the government can regulate domestic vessels within the territorial waters of the nation. As an attribute of that authority within the Constitution, Congress might well say, as it has by section 581, that the stoppage and search of vessels cannot be termed unreasonable. A search of a vessel by officers of the Coast Guard or of the customs for the purpose of discovering a cargo which might be subject to duty should not be regarded as unreasonable even though the search, as distinguished from the seizure, is made without probable cause. Boyd v. United States, 116 U. S. 616, 623, 6 S. Ct. 524, 29 L. Ed. 746. In Carroll v. United States, 267 U. S. 132, 154, 45 S. Ct. 280,

285, 69 L. Ed. 543, 39 A. L. R. 790, the court said: "Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in."

The officers of the Coast Guard have authority by section 581 to board and search vessels. If the vessel and her cargo are subject to forfeiture in violating the laws of the United States, it is immaterial upon what charge the seizing officer delivers the vessel or her crew to the United States authorities. It is for the United States attorney of the district to determine upon what charge he will proceed. Commercial Credit Corporation v. United States, 58 F.(2d) 195 (C. C. A. 2); sections 602–604 of the Tariff Act of 1930 (19 U. S. C. §§ 1602–1604 [19 USCA §§ 1602–1604]).

Prior to the Tariff Act of 1922 (section 581 [19 USCA § 481]) the right of seizure had been limited to inbound vessels, but since then the right of search has been extended to include foreign vessels, although not inbound. Cook v. United States, 288 U. S. 102, 112, 53 S. Ct. 305, 77 L. Ed. 641. Therefore, if the search of the vessel disclosed a violation of the Tariff Act, the boarding officer was obliged to seize the vessel and arrest the person in connection with the violation.

The appellee was committing a violation of the law. Indeed section 3068 of the Revised Statutes (18 U. S. Code § 122 [18 USCA § 122]) makes it an offense for the master of a vessel to obstruct or hinder an officer lawfully coming on board a vessel for the purpose of carrying into effect the revenue laws of the United States, The Barracouta (D. C.) 42 F. 160. And section 5447 of the Revised Statutes (18 U. S. Code, § 121 [18 USCA § 121]) makes it a criminal offense to resist, prevent, impede, or interfere with an officer of the customs making search and seizure in the execution of his duty. See, also, section 615 of the Tariff Act of 1930 (section 1615, title 19, U. S. Code [19 USCA § 1615]); section 4359 of the Revised Statutes (46 U. S. C. § 303 [46 USCA § 303]).

All we need decide is that the officers had legal power to board the vessel and inspect her license. R. S. § 4336 (46 USCA § 277). This applies not only to inbound vessels, but outbound, to foreign or domestic, to those which have never left waters of the United States. While lawfully on board in the exercise of this power, they incidentally learned

of the contraband. The authority to board the vessel is clear. When the officers did so, they found sufficient to warrant the search and seizure of the cargo. There was no violation of the appellee's constitutional rights in this search and seizure.

Order reversed.