**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rand Albert SOLMES, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Brian Alan TAYLOR, Defendant-Appellant.**

**Nos. 75–2548, 75–2564.**

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1975.

Rehearing and Rehearing En Banc Denied Feb. 25, 1976.

---

Keith C. Monroe (argued), Santa Ana, Cal., for defendants-appellants.

Michael J. Aguirre, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WALLACE, Circuit Judges, and PALMIERI,* District Judge.

WALLACE, Circuit Judge:

Solmes and Taylor appeal their convictions of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The single question raised in this appeal is whether the search of a boat as it was being hauled out of Mission Bay in San Diego was in violation of the Fourth Amendment. The district court found that it was not and we agree and affirm.

Solmes and Taylor were observed about 9:00 a. m. by a customs agent while they were on board a 24-foot white Thunderbird boat in Mission Bay, San Diego, California, taking on extra fuel. He observed them put out to sea and head towards Mexican waters at 25–30 knots. Upon inquiry of the marina operator, he found out that they had taken on 115 gallons of gasoline, of which 50 gallons went into a rubber bladder tank inside the craft. Solmes and Taylor had advised that they were taking some women to the Coronado Islands, which are within Mexican waters. The customs agent knew that there were no women aboard as the boat put out to sea.

That afternoon, a customs plane was dispatched to search and observed what appeared to be the same boat anchored off Puerto Santo Tomás, Mexico, 80 miles south of San Diego.

The following noon, the same customs agent saw Solmes and Taylor having lunch in San Diego. About an hour later, the agent found the vessel in a marina in Mission Bay, riding low in the front. From that time until the next morning when Solmes and Taylor pulled the boat out of the water, it was under

* Honorable Edmund L. Palmieri, United States District Judge, Southern District of New York, sitting by designation.

continuous surveillance. The customs officers identified themselves, requested a customs declaration which was negative, requested permission to search the vessel and subsequently found 819 pounds of marijuana locked in the bow together with five bottles of Mexican liquor.

The government advances two theories to support the search. First, it is contended that the search was a "customs search" of a vessel within customs waters as authorized by 19 U.S.C. § 1581.[1] As a second and alternative theory, it is proposed that this was an extended border search within the doctrine developed in *United States v. Markham,* 440 F.2d 1119 (9th Cir. 1971); *United States v. Weil,* 432 F.2d 1320 (9th Cir. 1970), *cert. denied,* 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971); and *Alexander v. United States,* 362 F.2d 379 (9th Cir.), *cert. denied,* 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). We need not reach the merits of whether the search can be justified in this case on either of these theories because there is yet a third legal analysis which more closely comports with the facts before us.

■ The search in this case is a border search. In *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Supreme Court held that the great latitude allowed for searches at the border also extends to the border's functional equivalents. The Court gave as one example of searches at the functional equivalent of the border "a search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City . . . ." *Id.* at 273, 93 S.Ct.

at 2539. Certainly a bay adjacent to an ocean is logically no different from an airport. Thus we hold that based on the facts of this case, Solmes and Taylor were at the functional equivalent of the border at Mission Bay when the search took place.

Such a conclusion, however, does not end our inquiry. That the St. Louis airport is a functional equivalent of the border does not mean that customs agents may search every plane which lands there. Customs agents do not have carte blanche authority to search aircraft arriving from points within the United States merely because nonstop flights from foreign countries also land there. An airport is a functional equivalent of the border only with respect to those airplanes arriving from outside the United States.

■ Similarly, pursuant to the functional equivalency test applied here, the customs agents are not at liberty to search every boat which enters Mission Bay. There are undoubtedly many pleasure craft entering the bay daily which have not come from foreign waters. A bay adjacent to an ocean is a functional equivalent of a border only with respect to vessels which have traveled in foreign waters before entry.

■ In this case, the trial judge found that the boat had recently sailed from Mexican waters and that finding is not clearly erroneous.[2] Thus, as the search was a border search, the agents did not need probable cause, the fact of its being a border search suffices. *United States v. Barclift,* 514 F.2d 1073 (9th Cir. 1975); *Witt v. United States,* 287 F.2d 389 (9th Cir.), *cert. denied,* 366 U.S. 950, 81 S.Ct.

---

1. 19 U.S.C. § 1581(a) provides:
 Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters . . . and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

"Customs waters" are defined to include those "within four leagues [approximately 12 miles] of the coast of the United States." 19 U.S.C. § 1401(j). There is considerable debate in the briefs about whether the waters of Mission Bay meet this definition, an issue which we need not reach here.

2. We do not mean to imply that a finding by the trial court that the boat actually crossed the border is always necessary, however.

1904, 6 L.Ed.2d 1242 (1961). The search here did not abuse the Fourth Amendment standard.

Solmes and Taylor contend that the search was invalid because the craft was not kept under continuous surveillance from the time it crossed the border. Such is not a requirement in this case.[3]

In an analogous argument, Solmes and Taylor also contend that the time delay between the arrival of the vessel at Mission Bay and its first observation by customs agents prevents this from being considered a border search. We disagree. At the time of the search in this case the boat was at the functional equivalent of the border and had arrived there at most a few hours earlier. Border searches need not take place at the instant a vessel arrives at the border or its functional equivalent, as long as the vessel remains there until searched.

Affirmed.

---

3. Compare our extended border search cases where such a requirement is reasonable and necessary. *United States v. Markham, supra;* *United States v. Weil, supra; Alexander v. United States, supra.*