UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Joe TILTON,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Bobbie Joe TILTON,
Defendant-Appellant.

Nos. 75–1916, 75–2244.

United States Court of Appeals,
Ninth Circuit.

April 21, 1976.

As Amended on Denial of Rehearing
June 2, 1976.

James M. McCabe, San Diego, Cal., for defendant-appellant in No. 75–1916.

Clarence Bender of Marsh, Graves & Bender, El Cajon, Cal., for defendant-appellant in No. 75–2244.

James W. Meyers, Asst. U. S. Atty. (argued), San Diego, Cal., Terry J. Knoepp, U. S. Atty., Stephen W. Peterson, Asst. U. S. Atty., San Diego, Cal., on the brief, for plaintiff-appellee.

OPINION

Before WALLACE and SNEED, Circuit Judges, and CRARY,* District Judge

WALLACE, Circuit Judge:

The Tiltons appeal their convictions of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. The question before

---

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

us concerns the legality of a search of a boat as it was removed from an ocean-connected bay. We remand.

On June 1, 1974, at the Shelter Island boat launching area in San Diego Bay, three persons were observed by a Customs Patrol officer towing a 23-foot Slickcraft boat and trailer with a pickup truck. They launched the boat about 3:00 p. m. The pickup, with only one occupant, and trailer were later seen leaving Shelter Island and were followed approximately six miles.

The Customs Patrol officer's attention had earlier been drawn to this particular boat because it was a very fast ocean-going motorboat capable of overnight trips to Mexico and of a type commonly used for smuggling. The agents had received a report that a boat of the same type had been seen heading north in Mexican waters at night but that it had evaded the observers' attempts to get close enough for an identification. The agents had learned that a slip was rented for the boat in the Shelter Cove Marina in San Diego Bay where it was usually kept, but on several occasions it was observed being towed on public highways.

The next day, on June 2, the Customs Patrol officer was on duty near the same public boat launching ramp. His attention was drawn to a pickup truck and boat trailer which appeared to be the same ones he had observed the day before. About 10:00 a. m. he and an off-duty Customs Patrol officer, who happened to be in the area, saw a 23-foot Slickcraft boat approach the ramp and be loaded on the trailer. The Tiltons were aboard. Instead of parking the boat in its slip at the marina, the Tiltons loaded it on its trailer for transportation. As soon as it was pulled off the ramp and into a nearby parking area, the agents searched the boat and discovered 880 pounds of marijuana.

The sole issue presented in this appeal is whether the fruits of the search of the Tiltons' boat should have been suppressed by the trial court. Neither party argues that there was probable cause for the search. Instead, the government contends that it did not need probable cause because this was a customs search.

The government argues that customs agents are given authority to conduct searches such as the one involved here by 19 U.S.C. § 1581(a) which provides: "Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters . . . and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle . . . ." It is true that the statute grants broad authority for customs searches. However, "no Act of Congress can authorize a violation of the Constitution." *Almeida-Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596, 602 (1973). Therefore, we must inquire whether the customs agents' exercise of their authority in this case was consistent with the Fourth Amendment's prohibition of unreasonable searches and seizures.

One well-recognized exception to the Fourth Amendment's requirement of probable cause is a search at an international boundary of persons and vehicles coming into the United States. *Id.* The Tiltons note, on the other hand, that a search of a vehicle lawfully within the United States must be based on probable cause. *See Carroll v. United States,* 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543, 551 (1925). Tiltons argue that since their boat was well within United States territory at the time of the search in this case,[1] the search cannot be justified as a border search.

■ The answer to this argument is that border searches may be conducted not only at the border itself, but also at its functional equivalents even though they are well within our country's territory. *See Almeida-Sanchez, supra,* 413 U.S. at 272–73, 93

---

1. *See Cunard Steamship Co., Ltd. v. Mellon,* 262 U.S. 100, 122, 43 S.Ct. 504, 507, 67 L.Ed. 894, 902 (1923) (territory of the United States includes "the ports, harbors, bays and other enclosed arms of the sea along its coast and a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles").

S.Ct. at 2539, 37 L.Ed.2d at 602; *United States v. Solmes*, 527 F.2d 1370 (9th Cir. 1975). Just as it is not practical to set up fixed checkpoints at the boundaries of United States airspace and require all incoming aircraft to stop and be subject to customs searches, *see Almeida-Sanchez, supra*, 413 U.S. at 273, 93 S.Ct. at 2539, 37 L.Ed.2d at 603, for obvious reasons, it is not practical to set up checkpoints at the outer perimeters of the territorial waters. Nor is it likely that incoming vessels will pick up or discharge passengers or cargo between their points of entry into territorial waters and their anchorages at United States ports. Thus, in *United States v. Solmes, supra*, we held that with respect to vessels coming from outside the territory of the United States, a vessel's anchorage in a domestic port is the functional equivalent of the border. 527 F.2d at 1372. For the same reasons that a search by Border Patrol officers is valid at a functional equivalent of a border, we hold that a customs search pursuant to section 1581(a) of such a vessel at such a place can be valid under the Fourth Amendment as a border search.[2]

This case, however, cannot be affirmed solely on the authority of *Solmes*. There "the trial judge found that the boat had recently sailed from Mexican waters." *Id.* at 1372. The district judge did not make such a finding in this case but he did state: "I'm not saying they don't have Fourth Amendment rights, but they don't have Fourth Amendment rights as far as their boats that they take out into the ocean and come back in." We cannot fault the trial judge for not making a finding whether the boat came from foreign waters; he did not have the benefit of our decision in *Solmes*. It is apparent, however, that the district judge's assumptions concerning the permissible scope of section 1581(a) customs searches went beyond the rule announced in *Solmes*. A trip from the bay into the ocean and back need not include passage beyond the limits of the territorial waters, and a

search at the return anchorage of such a boat would therefore not pass muster under *Solmes* as a search at the functional equivalent of the border. Thus, if the search is to be justified under the rule announced in *Solmes*, a remand for a post-conviction hearing on whether the boat came from foreign or international waters is necessary.

Nor do we believe the convictions of the Tiltons can be affirmed on the basis assigned by the district judge. He apparently concluded that section 1581(a) was constitutional and justified the search in this case as a customs search regardless of whether the boat came from foreign or international waters. In defense of that ruling, the government argues that effective enforcement of the customs laws requires that all vessels, whether or not there is any reason to believe that they have been in international waters, should be subject to search. There is some question whether 19 U.S.C. § 1581(a), on which the government relies for this authority, has ever been construed this broadly.

In *Fish v. Brophy*, 52 F.2d 198, 201 (S.D. N.Y.1931), the court held that the statute did not authorize the search of a pleasure boat where there were no facts which would lead agents to believe that the boat was carrying cargo from a foreign port. The continuing vitality of that decision must be questioned, however, in the light of dicta in *The Atlantic*, 68 F.2d 8, 9–10 (2d Cir. 1933), to the effect that searches of commercial and pleasure craft alike under the authority of 19 U.S.C. § 1581 are valid under the Fourth Amendment, apparently even without any indication that the vessel has been outside territorial waters. *The Atlantic* actually held, however, only that a stop for the limited purpose of inspecting a vessel's license under the authority of 46 U.S.C. § 277 was valid. Probable cause for the subsequent search arose when the odor of the contraband was detected by the officers. *Id.* at 10–11; *see also The Pueblos*, 77

---

**2.** Our qualification that this type customs search "can be valid" should be noted. There are other questions pertaining to customs

searches pursuant to section 1581(a) which are not raised and not briefed and obviously we do not pass upon them.

F.2d 618, 620 (2d Cir. 1935); *United States v. Wischerth,* 68 F.2d 161 (2d Cir. 1933).

Even if these cases could be read as approving the broad authority sought by the government, they would have to be reconsidered in the light of the principles announced in *Almeida-Sanchez.* We need not inquire whether such broad authority is consistent with *Almeida-Sanchez,* however, since the search here might be sustained on a narrower ground. *Cf. United States v. Ingham,* 502 F.2d 1287, 1290 (5th Cir. 1974), *cert. denied,* 421 U.S. 911, 95 S.Ct. 1566, 43 L.Ed.2d 777 (1975).

We hold that a search without probable cause pursuant to 19 U.S.C. § 1581(a) of a vessel in a harbor may be valid under the Fourth Amendment as a border search at the functional equivalent of the border, not only where, as in *Solmes,* there is evidence to support a finding that the boat actually came from international or foreign waters, but also where there are articulable facts to support a reasonably certain conclusion by the customs officers that a vessel has crossed the border and entered our territorial waters. Thus, this latter rule looks not to whether the vessel actually crossed into United States territory, but whether the searching customs officers were reasonably certain that it did.[3]

This holding is not inconsistent with *Solmes.* There we indicated the restricted nature of our pronouncement by stating:

> We do not mean to imply that a finding by the trial court that the boat actually crossed the border is always necessary, however.

*Id.* at 1372 n.2. We recognize that eye witnesses are not usually available when an airplane or boat crosses into our territorial space. A specific finding of entry from a foreign jurisdiction cannot always be made. In analogous situations we have recognized this difficulty and held that where agents are "reasonably certain" that parcels have been smuggled across the border, a stop and search are authorized. *See United States v. Markham,* 440 F.2d 1119, 1121–22 (9th Cir. 1971); *United States v. Weil,* 432 F.2d 1320, 1323 (9th Cir. 1970), *cert. denied,* 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971). A similar rule should apply to justify a customs search pursuant to section 1581(a) at the functional equivalent of the border when agents are reasonably certain that the vessel has crossed the border.

While the "reasonable certainty" required here has not been precisely defined, it has been noted that " 'reasonable certainty' . . . is clearly a higher standard than that of probable cause." *United States v. Kessler,* 497 F.2d 277, 279 (9th Cir. 1974); *see also United States v. Bates,* 533 F.2d 466 (9th Cir. 1976). It is, however, directed to a different question: if the customs agents are reasonably certain that a boat crossed the border, the boat may be subjected to a border search without any cause at all to believe that any crime is being committed. We do not believe that "reasonable certainty" is so much stricter than probable cause as to require that the agents have knowledge of facts which prove a border crossing beyond a reasonable doubt. We conclude that the only modification of ordinary probable cause required is that the totality of the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information be sufficient in the light of their expe-

---

**3.** This question was recognized and left open by *Almeida-Sanchez.* In distinguishing the regulatory search cases, *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), approving warrantless inspections of establishments of regulated businesses, the Court noted:

> Moreover, in *Colonnade* and *Biswell,* the searching officers knew with certainty that the premises searched were in fact utilized

for the sale of liquor or guns. In the present case, by contrast, there was no such assurance that the individual searched was within the proper scope of official scrutiny—that is, there was no reason whatever to believe that he or his automobile had even crossed the border, much less that he was guilty of the commission of an offense.

*Almeida-Sanchez, supra,* 413 U.S. at 271–72, 93 S.Ct. at 2539, 37 L.Ed.2d at 602. *See also id.* at 268, 93 S.Ct. at 2537, 37 L.Ed.2d at 599.

rience to warrant a *firm* belief that a border crossing has occurred. *Cf. Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed.2d 543, 555 (1925).

On this limited ground, it might be possible for us to find evidence in the record supporting a finding that the customs officers had articulable facts to support a reasonably certain conclusion that the Tiltons' boat crossed the border. However, no such finding was made by the district court. Further, both the Tiltons and the government should have the opportunity to produce whatever added evidence they may have on this issue at a post-conviction hearing. Thus, we cannot affirm this case on this limited ground either.

The case is remanded for a hearing on the question whether the fruits of the search should have been suppressed. The denial of the motion to suppress was proper if the district judge now finds that the boat actually came from outside territorial waters, as in *Solmes,* or if he finds that there were articulable facts to support a reasonably certain belief by the customs agents that the boat crossed from outside territorial waters.

REMANDED.