**UNITED STATES of America**

v.

**Brian J. CORP.**

**No. 77–20118.**

United States District Court,
W. D. Tennessee, W. D.

Nov. 23, 1977.

Devon L. Gosnell, Asst. U. S. Atty., Memphis, Tenn., for plaintiff.

Irvin M. Salky, Memphis, Tenn., Richard D. Burris, Tucson, Ariz., for defendant.

## MEMORANDUM OPINION AND ORDER

### WELLFORD, District Judge.

Defendants are charged with various violations of the controlled substances laws and conspiracy. On April 26, 1977, at approximately 8:30 a.m., defendants' aircraft, Tail No. N–2901F, landed at the Memphis International Airport with one of its engines in a "feathered" condition (a propeller was not functioning and was turned inward toward the aircraft) without the usual notification of this condition to the tower. The aircraft taxied to a privately owned air terminal for refueling and repair of the malfunctioning engine. Two of the defendants, Corp and Nigro, were observed leaving the aircraft, a four engine DC–6 (a large cargo plane) during maintenance, while one remained on board. When the defendants returned after several hours, FAA official John Wright approached the cockpit of the plane and questioned Corp, the apparent pilot, about his failure to notify the FAA about the malfunctioning pro-

pellor, as required by FAA regulations.[1] Corp gave evasive and contradictory answers regarding his identity, the whereabouts of his pilot's certificate and aircraft documents, and the plane's departure and destination points. Corp refused to answer further questions and ordered Wright from the aircraft. Wright contacted Customs Inspector Jones and the New Orleans Office of Customs and Immigration, with which he was familiar. Jones spoke to Corp over the telephone and Corp gave him an incorrect name as well as an incorrect tail number; he also told Jones that his point of origin was Detroit. Jones then proceeded to the terminal where he asked Corp for some identification. Corp produced a passport in the name of Brian Jay Corp, which indicated that Corp had, within the past several months, been to Colombia and Venezuela. The passport bore no re-entry stamp into the United States which further aroused Jones' suspicions. The defendant asserts correctly, however, that a re-entry stamp is not required for a United States citizen from any other country in the Western Hemisphere. Defendant also asserts that Jones did not then attempt to examine the logs of the aircraft to determine the point of origin.[2]

Following further questioning by Jones and Corp's refusal to respond, defendant was detained on Jones' instructions. Jones observed locks on the doors of the aircraft, that the windows and access points were covered over from outside view and that no one had been permitted access to the inside of the plane. Corp specifically refused to reveal the point of origin of the flight, its cargo or its destination.

Jones checked with the Regional Customs Office at Mobile and could get no information on the plane, except that evidently it had not cleared customs. He also noted marks and scratches on the propellors and underside, from which he inferred that the plane had apparently been operated from

1. The pilot had also failed to notify the tower as to the type of plane he was flying and it had at first been directed to an inadequate runway for such a large aircraft.

2. The logs did not, as a matter of fact, reflect the flight's origin but showed recent service of this plane at Detroit.

rough or gravel runways uncharacteristic of United States airports for planes of this size with a range of several thousand miles. When he could not obtain other identification and information pertinent to Customs clearance or cargo manifest, Jones and officers of several law enforcement agencies then attempted to board the aircraft. They discovered upon entry approximately 5420 pounds of marijuana, two .30 calibre automatic weapons and over 500 rounds of .30 calibre ammunition aboard. Corp had, in the interim, been placed under arrest and given his *Miranda* warnings by local police who discovered Corp attempting to hide a key in the police car. When seized, it turned out to be a key to one of the aircraft doors which was utilized by the authorities to enter the plane.[3]

Defendant Corp has filed a motion to suppress under the circumstances and a hearing was held at which proof and evidence were adduced. Defendant bases the motion on these contentions:

1. Defendant's "arrest" was without probable cause.
2. Inspector Jones, as a U. S. Customs Officer, did not have the authority to make a warrantless search of the aircraft under the facts of this case.
3. Jones, himself, did not first enter the aircraft to constitute a proper Customs search.

The government, on the other hand, takes the following positions:

1. Probable cause to arrest the defendant did exist prior to the search.
2. Probable cause existed for a warrantless search of the aircraft.
3. The Customs agent was empowered by statute to make a warrantless search of the aircraft based on "reasonable suspicion".

## AUTHORITY OF CUSTOMS OFFICER— BORDER SEARCH

Did this particular scenario justify something akin to a "border search" by the customs agent? 19 U.S.C. § 482 provides:

"Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise; and to search any trunk or envelope wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."

19 C.F.R. § 162.5 (1977) provides:

"A Customs officer may stop any vehicle and board any aircraft arriving in the United States from a foreign country for the purpose of examining the manifest and other documents and papers and examining, inspecting, and searching the vehicle or aircraft."

In *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Supreme Court recognized as valid routine searches of persons and their belongings near international borders in the absence of probable cause to believe a violation had actually occurred. Such a routine search was permissible because located at the "functional equivalent" of a border. As another example, the Court noted that " . . . a search of the passengers and

---

**3.** Jones, after the discovery of the contraband, placed Corp under his arrest. Once again, the defendant was given his *Miranda* warnings.

cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search." *Id.* at 273, 93 S.Ct. at 2539.

This *Almeida-Sanchez* "functional equivalent of a border" analysis has been applied to searches of airplanes by Customs officials at airports. In *United States v. Ivey,* 546 F.2d 139 (5th Cir. 1977), the Court held that before a border-type search of an aircraft is permitted, there must be a " . . . high degree of probability that a border crossing took place." *Id.* at 142. Another court, in discussing Customs officials' ability to search vessels under 19 U.S.C. § 1581(a) stated that a border search is warranted " . . . where there are articulable facts to support a reasonably certain conclusion by the custom officers that a vessel has crossed the border . . . ." *United States v. Tilton,* 534 F.2d 1363, 1366 (9th Cir. 1976). Again, the *Ivey* court stressed that the aircraft need not have been observed crossing the border, but that Customs officials " . . . are entitled to draw reasonable inferences from circumstances and base their actions on common sense judgments." 546 F.2d at 142.

*United States v. Ivey, supra,* and *United States v. Brennan,*[4] 538 F.2d 711 (5th Cir. 1976) deal with the question of a "functional equivalent of a border" search and reach contrary results based upon differing factual settings, but they both emphasize the need for the existence of reasonable grounds to believe the plane had crossed the United States border and entered this country without a prior Customs clearance or inspection at the time of the search in question.

▆ The facts of this case present a situation where the Customs officer's conclusion that the flight was international in origin is not as strong as in *Brennan, supra.*

Corp's passport merely indicated that the pilot had been out of the country. There was no way to know or to determine by some ready means that the aircraft had landed at Memphis following an international flight border-crossing at Memphis. Did there exist a "high degree of probability that a border crossing took place?" The authorization to search without a warrant found in 19 U.S.C. § 482 and its implementing regulation to "search a vehicle upon mere suspicion" is doubtful under these circumstances; we pass, therefore, to other contentions.

## AUTHORITY OF CUSTOMS OFFICER— DETENTION FOR QUESTIONING

▆ An alternative mode of analysis is demonstrated by *United States v. Mirmelli,* 421 F.Supp. 684 (D.N.J. 1976). The court there held that, at an international airport, customs officials are empowered to stop and detain the pilot of an aircraft while the officials question the pilot as to the origin of the flight, citing *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Facts demonstrating a "reasonable suspicion" are required for such a detention. 421 F.Supp. at 688. If a detention is legally initiated, subsequent facts may convert the suspicion into probable cause to search. *Id.* at 689–90.

▆ In the present case, "reasonable suspicion" to detain and question Corp is supported by: (1) Corp's failure to report the malfunction of his engine as required by FAA regulations[5]; (2) unusual circumstances conveyed to Inspector Jones by the FAA official with regard to conflicting and evasive information and refusal to produce appropriate documentation about the plane and its origin; (3) Corp's passport indicated that he had given Jones a false name and

4. The warrantless search in *Brennan* was upheld, however, on a finding of probable cause based on the corroboration of an informant's tip. The Court did not, however, hold that an airplane was the legal equivalent of an automobile rendering a warrant impractical in all circumstances. *Cf. Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

5. This was the first time this had happened at Memphis according to the chief air traffic controller at the airport.

incorrect aircraft tail number over the telephone; (4) the suspicious appearance of the aircraft, including padlocked doors and painted-over windows; (5) payment of aircraft charges in the form of cash and refusal to admit any persons on board for any purpose; and (6) Corp's attempt to hide the key to the airplane in the ashtray of the car in which he was being detained (or under arrest by local—not federal—authorities). Jones had a reasonable basis for detaining Corp and, after the entry into the plane, in bringing about his arrest. These facts would justify a "prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Given probable basis for detention and entry of the plane, was a warrantless search justified? In *United States v. Chuke*, 554 F.2d 260 (6th Cir. 1977), the court held that a failure to get a warrant when feasible does not *per se* invalidate a search even if there were, as is indicated here, a reasonable opportunity to secure a warrant or authority to make an entry into the aircraft for an inspection. The government must come forward with objective evidence tending to justify a deviation from the normal police practice of obtaining a warrant. Before entry of the aircraft, it was not then known whether other persons were aboard or whether documents and information aboard might clarify the situation. (The marijuana was in open and obvious view without an actual "search" of the aircraft once entry was accomplished). Potential mobility of the airplane, and uncertainty as to whether one or more of the crew members were inside the aircraft with the opportunity to take off, to hide or destroy evidence or contraband, constitute in this instance "exigent circumstances", which excuses the warrant requirement in this Court's judgment. *United States v. Brennan, supra.* Of course, it would have been preferable for a warrant to have been sought and/or obtained in this case prior to entry of the aircraft.

No question has been presented by the government as to Corp's standing to challenge the assertedly unauthorized entry of the aircraft and seizure of evidence on board. He was not shown to be the owner of the craft, nor has there been any challenge on his part of the FAA's right to enforce its regulations relating to pilot and aircraft documents and certificates. The Court here has determined that the government, through its Customs Department, had the right to detain and to question Corp about his credentials, the cargo, and the point of departure and destination, under the circumstances. When no adequate responses or information were produced, the circumstances also warranted an entry of the plane. The contraband was then in plain view.

## PROBABLE CAUSE

The government maintains that a "totality of circumstances" approach is here applicable as enunciated by the Sixth Circuit in *United States v. Prince*, 548 F.2d 164 (6th Cir. 1977).

■ The Sixth Circuit court of appeals has stated: "Probable cause means 'more than bare suspicion.' It means 'reasonable ground for belief of guilt.'" *United States v. Lewis*, 504 F.2d 92, 101 (6th Cir. 1974), quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ Probable cause did exist to believe there was a law violation at the time Corp was arrested and advised of his rights by Jones (although perhaps not at the time the local police arrested him a few minutes earlier). In any event, Jones as a Customs Officer did have sufficient basis to detain Corp (and the crew or passengers) while he attempted to make entry of the plane to discover if there were a violation of the Customs or other laws or regulations within the area of his responsibility. When the police learned of Corp's attempt to hide the plane key, their prior suspicions may well have ripened into probable cause to arrest independently of other information known by Customs at the time.[6] Furthermore,

---

6. "In determining whether probable cause existed, we must evaluate the collective informa-

tion of all the officers." *White v. United States*, 448 F.2d 250 (8th Cir. 1971). Compare

while the Court believes it to have been established that Jones made the initial entry into the plane, this issue raised by defendant does not seem determinative on the issue of the validity of the entry. In any event, the entry was initiated and brought about by the Customs officer, who was present personally at the scene, and the fact that another local enforcement official or another person may have participated in unlocking the door at Jones' direction, would not affect the outcome.

While this has been a close and interesting issue, capably presented by the parties, the Court, for the reasons indicated, will overrule the motion to suppress the evidence obtained on the plane.

See also, D.C., 444 F.Supp. 10.

*United States v. Ragsdale*, 470 F.2d 24 (5th Cir. 1972) wherein it was held that knowledge of certain facts and circumstances of one officer as to probable cause may in some conditions be imputed to other officers.