## UNITED STATES v. SULLIVAN.
### et al.

Circuit Court of Appeals, Fifth Circuit.
May 28, 1928.

No. 5186.

1. **Customs duties** �kö=63—Vessel does not make "entry" by arriving at a port, compliance with port regulations being necessary.

A vessel does not make "entry" under the customs laws by arriving at a port, but "entry," in technical sense of navigation laws, means compliance with regulations of port for purpose of taking on or discharging passengers or cargo, not merely putting in for orders or supplies or repairs.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Entry.]

2. **Customs duties** ⊂=86—Statute authorizing Secretary of the Treasury to require bond from vessel with cargo for foreign port held not applicable to vessels not required to make entry (Tariff Act 1922, §§ 441, 442 [19 USCA §§ 251, 252]).

Tariff Act 1922, § 442 (19 USCA § 252), providing that vessel having merchandise cargo, shown by its manifest to be destined to a foreign port, may, after report and entry,

proceed to its foreign destination without unlading and without paying duty thereon, and authorizing Secretary of the Treasury to require master to give bond conditioned that no merchandise shall be landed in United States, *held* not applicable to vessels not required to make entry under section 441 (19 USCA § 251), which includes vessels arriving in distress.

3. **Customs duties** ⊂=53—Secretary of the Treasury may make reasonable rules to carry out Tariff Law, but not adding to or taking away from statute (Tariff Act 1922, § 442 [19 USCA § 252]).

Under Tariff Act 1922, § 442 (19 USCA § 252), the Secretary of the Treasury has authority to make rules designed to carry into effect the provisions of the Tariff Law, especially its administrative features; but such orders, rules, and regulations as are made must be reasonable, and cannot add to or take away from statute.

4. **Customs duties** ⊂=86—Regulation requiring penal bond, conditioned that cargo be actually delivered at foreign port of destination, is unreasonable (Tariff Act 1922, § 442 [19 USCA § 252]).

Regulation of Secretary of the Treasury, under Tariff Act 1922, § 442 (19 USCA § 252), requiring penal bond from vessel having cargo destined to a foreign port, conditioned that cargo be actually delivered to port of destination shown in manifest, goes beyond requirements of statute and is unreasonable.

5. **Customs duties** ⊂=86—Condition of bond furnished by foreign vessel arriving at port in distress, requiring delivery at foreign port of destination, held one of "indemnity," not "forfeiture" (Tariff Act 1922, §§ 441, 442 [19 USCA §§ 251, 252]).

Under Tariff Act 1922, §§ 441, 442 (19 USCA §§ 251, 252), bond required to be furnished to United States by master of foreign vessel arriving at port in distress before being permitted to depart, to the effect that goods shown in manifest to be destined for a foreign port should be landed at stated destination and proof thereof furnished, if valid at all, *held* enforceable only as one for indemnity to protect the fisc, and not one of forfeiture, and could not be recovered on by government for failure to land cargo at such foreign port because cargo was sold to another vessel on high seas.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forfeit—Forfeiture; Indemnity.]

In Error to the District Court of the United States for the Southern District of Florida; William I. Grubb, Judge.

Action by the United States against Scuddy W. Sullivan and others. Judgment for defendant, and the United States brings error. Affirmed.

Arthur W. Henderson, Sp. Asst. Atty. Gen., Francis L. Poor, Asst. U. S. Atty., of Jacksonville, Fla. (Mabel Walker Willebrandt, Asst. Atty. Gen., and William M.

Gober, U. S. Atty., of Tampa, Fla., on the brief), for the United States.

Edward S. Hemphill, of Jacksonville, Fla., and E. W. Middleton and Thomas H. Middleton, both of Charleston, S. C. (Middleton & Middleton, of Charleston, S. C., on the brief), for defendants in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This case was heard on a stipulation as to the facts. Those material to a decision are as follows:

The British auxiliary yacht Florence cleared from Havana, Cuba, for St. Pierre, Miquelon, with a cargo of whisky destined for the latter port, as shown by her manifest and other papers. She became disabled on the high seas and hoisted distress signals. The United States revenue cutter Tallapoosa came to her assistance and was requested by her master to tow her to Brunswick, Ga., in order to have repairs made. The commanding officer of the Tallapoosa declined to take the Florence to Brunswick, but towed her to Fernandina, Fla., where she arrived early on the morning of October 8, 1922. The master of the Florence reported promptly to the collector of customs at Fernandina, told him that he had come in distress, advised him that he had no intention of landing any of his cargo in the United States, and presented a letter from the commanding officer of the Tallapoosa, verifying his statements as to having been brought in for necessary repairs, and also stating that the Florence had not violated any law of the United States.

Repairs could not be made at Fernandina, and the master of the Florence requested permission to go to Brunswick, but the collector of customs declined to let the Florence proceed until he consulted his superiors. On telegraphic instructions from an Assistant Secretary of the Treasury he demanded that the master of the Florence give bond in the penal sum of $18,700, the estimated duty on the cargo. The Florence was detained at Fernandina for 10 days, until her master executed the bond in suit, in the form required by the collector, under protest. He was then permitted to proceed to Brunswick, where the repairs were made within 24 hours and the Florence departed. Later her cargo was sold and delivered to another vessel on the high seas. From the time the Tallapoosa first took the Florence in tow, until after she had departed from Brunswick and again reached the high seas, she was under guard by the customs officers.

The bond executed contained, among others, the following condition: "(3) And if all articles shown on the manifest of said vessel to be destined for other United States customs ports or for foreign ports are landed at the destination stated and proof thereof is furnished the said collector in the form and within the time required by law and regulations, or any lawful extension thereof."

Alleging a breach of the above-quoted provision of the bond, which is admitted, in that the cargo was not delivered at St. Pierre and no proof to that effect was furnished the collector, the United States brought suit to recover the full amount of the bond. The case was tried without the intervention of a jury and the District Court held the bond to be void and unenforceable and entered judgment accordingly.

It is contended by the government that the bond in suit is a statutory bond; that it is not void and unenforceable because exacted against the will of the makers; and that it is a forfeiture bond recoverable in full for breach of its condition above set out. The Tariff Act of 1922 (42 Stat. 858) had been in force for a few days when the Florence reached Fernandina and must be looked to for the law applicable to the case. Sections 441 and 442 of that statute provide as follows:

"The following vessels shall not be required to make entry at the customhouse: * * *

"(4) Vessels arriving in distress or for the purpose of taking on bunker coal, bunker oil, or necessary sea stores and which shall depart within twenty-four hours after arrival without having landed or taken on board any merchandise other than bunker coal, bunker oil, or necessary sea stores."

Section 441 (19 USCA § 251).

"Any vessel having on board merchandise shown by the manifest to be destined to a foreign port or place may, after the report and entry of such vessel under the provisions of this act, proceed to such foreign port of destination with the cargo so destined therefor, without unlading the same and without the payment of duty thereon. Any vessel arriving from a foreign port or place having on board merchandise shown by the manifest to be destined to a port or ports in the United States other than the port of entry at which such vessel first arrived and made entry may proceed with such merchandise from port to port or from district to district for the unlading thereof. * * * The Secretary of the Treasury may, by general regulations or otherwise, require the master or owner of any vessel so proceeding to a foreign

port or to a port or district other than that at which the vessel first arrived to give a bond in an amount equal to the estimated duties conditioned that no merchandise shall be landed in the United States from such vessel without entry therefor having been made and a permit secured from the customs officer and for the production of such landing certificates or other evidence of compliance with such bond as the Secretary of the Treasury may by general regulations require."

Section 442 (19 USCA § 252).

That the bond in suit was not given voluntarily is plain. However, if it was within the authority of the Secretary to require it under the terms of the statute to guarantee the performance of a duty it is none the less collectable in full for breach of the condition shown.

[1] Under the provisions of section 441 the Florence was not required to make entry at the customhouse either at Fernandino or Brunswick, and but for the action of the collector at the first port she would have departed within 24 hours. It is insisted by the government that the Florence did in fact make entry at Fernandina, but this is denied and the contention is not supported by the record. A vessel does not make entry by arriving at a port. Entry in the technical sense of the navigation laws means compliance with the regulations of the port for the purpose of taking on or discharging passengers or cargo and not merely putting in for orders or supplies or repairs. Harrison v. Vose, 9 How. 372, 13 L. Ed. 179.

[2] The reasonable interpretation of section 442 is that it was not intended to apply to vessels not required to make entry. There were no general regulations in force at the time, and it hardly can be doubted that, if the Florence had been laden with any other kind of cargo, she would have been permitted to proceed to Brunswick without bond. If it be conceded arguendo that in the exercise of sound discretion the Secretary might apply the provisions of section 442 to any vessel touching at a port, there still remains for consideration the extent of his authority regarding the provisions of the bond exacted and whether it is to be considered a forfeiture bond or one for indemnity.

[3] The Secretary of the Treasury has authority to make rules designed to carry into effect the provisions of the Tariff Law, especially its administrative features, but such orders, rules, and regulations as are made must be reasonable and cannot add to or take away from the statute. Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267;

Campbell v. United States, 107 U. S. 407, 2 S. Ct. 759, 27 L. Ed. 592; United States v. Eaton, 144 U. S. 677, 12 S. Ct. 764, 36 L. Ed. 591.

[4] Section 442 deals with two classes of vessels, one having on board cargo destined to a foreign port, and the other having cargo destined to another domestic port. As to the first, the government is not concerned with the delivery of the cargo, provided it does not enter the United States without paying duty. A regulation requiring a penal bond, with a condition that the cargo be actually delivered at the port of destination shown in the manifest goes beyond the requirements of the statute and is unreasonable. For instance: Suppose the ship was lost, or the port was blockaded, or quarantine regulations prevented entry, or the goods for some other reason were denied entry, or the owner desired to divert the goods because of market conditions. In any of these contingencies the condition of the bond would be breached, and the penalty could be exacted, though unjustly, if the bond were valid.

It is suggested in the brief that, if a bond may not be exacted from a vessel arriving in distress with a cargo of liquor, the government will be powerless to protect itself against unlawful importation of the cargo. Doubtless any rum runner would welcome the chance to land her cargo by merely paying the duty. The bond in such case would be no protection at all. But expediency does not create legality. The government can be amply protected by guarding the cargo, as was done in this case. It is shown conclusively that the Florence did not violate any law, and it is useless to speculate as to what might have happened. The cargo could not have been lawfully imported. No question of collecting revenue is presented, and it is not within the province of the Secretary of the Treasury to promulgate rules to enforce a criminal statute in such case. See opinion of Attorney General Wickersham, 28 Op. Attys. Gen. 99.

[5] On the question as to whether the bond in suit is penal, or for indemnity, the case is also with appellees. If the prejudice attending the enforcement of the National Prohibition Act (27 USCA) is put aside, and the case regarded as if the Florence were loaded with a more innocent cargo, this is at once apparent. It would be oppressive in the extreme, and a violation of the laws of hospitality adopted by all civilized nations, if the United States enacted a penal bond from vessels seeking her harbors in distress before permitting their departure.

The bond in suit was exacted by duress, and the master and owners of the Florence owed no duty to the United States to proceed to St. Pierre. Cases dealing with bonds given voluntarily or to guarantee the performance of a duty are therefore not in point. For the rule applicable, see U. S. v. Tingey, 5 Pet. 115, 8 L. Ed. 66, and Constable v. National S. S. Co., 154 U. S. 51, 14 S. Ct. 1062, 38 L. Ed. 903.

The only concern of the Secretary of the Treasury was to make sure that the cargo should not be landed in the United States without the payment of duties, and his authority went no further under the circumstances of this case. The bond, if valid at all, must be considered one for indemnity to protect the fisc. As no tariff duties are due, of course, there could be no recovery. U. S. v. Zerbey, 271 U. S. 332, 46 S. Ct. 532, 70 L. Ed. 973.

Our attention is called to the case of Eagle Indemnity Co. v. U. S. (C. C. A.) 22 F.(2d) 388. That case is practically identical with the one at bar, except that the vessel made formal entry, and the contention that the bond was not voluntarily given was abandoned on appeal. With all due respect to the high authority of that case, we have reached a different conclusion, and decline to follow it.

Affirmed.