UNITED STATES of America,
Appellee,

v.

Ralston Douglas George NUNES,
Defendant-Appellant.

No. 74–1013.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1975.

Decided Feb. 21, 1975.

Daniel R. Dominguez, by appointment of the court, with whom Laffitte & Dominguez, Hato Rey, P. R., was on brief, for appellant.

Jorge Rios Torres, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Defendant Nunes, a Jamaican, was indicted and charged with "knowingly and intentionally importing" into Puerto Rico from the Republic of Jamaica 375 pounds of marihuana in violation of 21 U.S.C. §§ 952(a) and 960(a)(2). A second count, charging possession with intent to dispose, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), was dismissed while the jury was deliberating because of a defect in draftsmanship. He was found guilty of importing, and now appeals.

Our initial concern is with the court's denial of a motion to suppress evidence, viz., the marihuana taken by Customs agents from a plane in which defendant was sitting as co-pilot [1] at the San Juan International Airport. Defendant, who was the principal witness at the hearing on the motion, testified that he accepted an offer from his friend Benjamin to accompany him as co-pilot in a small plane on a flight from Jamaica to Beef Island, British Virgin Islands; that he accepted because he wished the flying experience; that after the flight had started he asked Benjamin what was in four large suitcases; that Benjamin told him it was marihuana; that they stopped in the Dominican Republic for gasoline; that the plane was equipped only for visual flight; that thereafter they ran into heavy rain and got lost because of lack of visibility; that they found themselves passing San Juan International Airport, where they received radio instructions for Beef Island, but then discovered that because of having been off course they were almost out of fuel; that they asked and received permission to make an emergency landing; that on landing they were asked if they "were needing Customs services," to which they replied that they were en route to Beef Island; that they paid a landing fee and moved to a fuel area; that when the plane was about to be refuelled and both parties were still aboard, a Customs agent arrived and stated, "All planes, according to regulations, landing in Puerto Rico, are subject to search," and then, after they had fueled, proceeded to do so, finding the marihuana.

---

1. The pilot, one Benjamin, was also indicted, but found not mentally fit to stand trial

In denying the motion to suppress the district court stated that it was not resolving any contradictions in the evidence because on no theory could the motion be allowed. Actually, we are not clear what contradictions there were. So far as there were any airport records, they confirmed the fact that there was a heavy rain, and that the plane had requested to land for fuel, and was in substantial need of it. And at the subsequent trial the Customs agent himself testified that he was told the landing was only for fuel, and that he replied "that every plane coming from a foreign country . . . must go to Customs and make a declaration." It is clear, in other words, that Benjamin and defendant were not told that because they were landing in distress they were entitled to special treatment.

▉▉▉ In support of his motion to suppress, defendant cited 19 U.S.C. § 1441(4) which provides as follows:

§ 1441. *Vessels not required to enter*

The following vessels shall not be required to make entry at the customhouse:

.    .    .    .    .

"(4) Vessels arriving in distress or for the purpose of taking on bunker coal, bunker oil, sea stores, or ship's stores and which shall depart within twenty-four hours after arrival without having landed or taken on board any passengers, or any merchandise other than bunker coal, bunker oil, sea stores, or ship's stores: Provided, That the master, owner, or agent of such vessel shall report under oath to the collector the hour and date of arrival and departure and the quantity of bunker coal, bunker oil, sea stores, or ship's stores taken on board."

The district court held it inapplicable because of the paramount authority of section 1581(a).

"§ 1581. *Boarding vessels*

(a). Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under sections 1701 and 1703–1711 of this title, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance."

This was wrong.[2] Section 1441(4) would be meaningless unless it is an exception to the general provisions of section 1581(a). The court was correct when it said that this section was based upon the "broad grant of inspection and search powers . . . to be found in 19 U.S.C. § 482," but it failed to note that section 482 is expressly limited to searching for "merchandise which is subject to duty, and shall have been introduced into the United States in any manner contrary to law." Secondly, in citing only section 1581(a), and not noting section 1581(e), it failed to recognize that section 1581, also, is for the purpose of determining whether there has been a violation of the laws of the United States. If a vessel has qualified under section 1441(4) it has not violated the customs laws. Correspondingly, there was no requirement that it make a declaration. If, by searching, it could then be concluded as a result of the search that the cargo had been unlawfully "imported,"

2. The court, properly, did not rely upon Benjamin's failure to file the formal notification contained in section 1441(4)'s proviso. Benjamin did make an oral report to the Customs officer, and the minimum duty the officer owed a very possibly ignorant alien in the circumstances was to tell him it was required to be made more formally, rather than simply to proceed in disregard of his substantive rights.

section 1441(4) would be written off the books.[3]

There is, however, a further difficulty, but before reaching it we mention our case of Leiser v. United States, 1 Cir., 1956, 234 F.2d 648, cert. denied, 352 U.S. 893, 77 S.Ct. 133, 1 L.Ed.2d 87, which appears to have escaped attention. In that case we drew a distinction between search of an individual, who could be required to declare his personal baggage even though arriving as a result of distress,[4] and the plane and its cargo. In the case at bar the government, in response to a question from the court, agreed during argument, quite properly, that the 375 pounds of marihuana was not baggage. Clearly it was cargo. Moreover, even in Leiser, the penalty for non-declaration was forfeiture, not jail.

■■■ The further matter that seems to have escaped attention is that as used in sections 1441(4) and 1581 the word "vessel" does not include aircraft, 19 U.S.C. § 1401(a), and "vehicle," used in section 1581, does not, either. 19 U.S.C. § 1401(b). In terms, therefore, neither statute was applicable to this case. Nor does a search of the Code reveal any statutes that are directly relevant, either from defendant's standpoint, or the government's. In these circumstances we discover that, in reliance upon 19 U.S.C. §§ 66 and 1624,[5] the Secretary has issued a complete set of regulations for aircraft paralleling, with appropriate changes, the statutory provisions relating to vessels and vehicles. 19 C.F.R. Ch. 1, Part 6—*Air Commerce Regulations*. Section 6.3(g) thereof, entitled *"Emergency or forced landing"* is an extensive provision. While its terms do not track section 1441(4), for two reasons we must construe them broadly in pari materia. In the first place, the Secretary does not have power under sections 66 and 1624 to issue regulations inconsistent with the general precepts and tenor of the enacted legislation. United States v. Sullivan, 5 Cir., 1928, 26 F.2d 606. But, more important, section 1441(4) is not an act of governmental munificence. Rather, in making a hands-off provision for emergency landings it recognizes fundamental principles of international law. See The Brig Concord, 1815, 9 Cranch 387, 3 L.Ed. 768; The Mary, CC Mass. 1812, 16 Fed.Cas. p. 932, No. 9, 183; *cf.* United States v. Sullivan, ante. Although the district court looked to section 1441(4) and should have looked to 19 C.F.R. § 6.3, ante, the result should have been the same. The Customs officials had no right to demand a declaration of cargo, much less to search and seize, so long as the plane was landing no cargo or passengers and was pursuing its emergency refueling and its announced intention to depart abroad.

We can only express our regret that this defendant has apparently, for want of bail, been incarcerated for 22 months.

---

3. We are talking only in terms of a border search for violation of the Customs laws, either as to duty, or unlawful *importation*. If, supported by a showing of probable cause, and not by the mere "suspicion" test that Customs officers are accustomed to, there were grounds to believe that some other law was being violated, a search may be warranted, subject to the usual conditions. *See also* section 1581(b). What the Customs officers did here was precisely wrong. They demanded a declaration, which they had no right to do, and then used the occupants' "nervousness" as a reason for a search. This is reminiscent of Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

4. It is not clear that even *Leiser* would have applied to this defendant, who had not yet disembarked.

5. "§ 66. *Rules and forms prescribed by Secretary*

The Secretary of the Treasury shall prescribe forms of entries, oaths, bonds, and other papers, and rules and regulations not inconsistent with law, to be used in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports, or to warehousing, and shall give such directions to customs officers and prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law."

"§ 1624. *General regulations*

In addition to the specific powers conferred by this chapter the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this chapter."

Mandate ordering acquittal directed forthwith. We may hope that if Benjamin is still in custody, or the plane and cargo were confiscated, that such correction as is now possible will be promptly effected.