**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Don Vallie WILLIAMS, Sylvia Trawick Williams, Mildred D. Derrington and Nicholas Carter Moore, Defendants-Appellants.**

No. 76–1754.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1977.

Franklin R. Harrison, Panama City, Fla., for defendants-appellants.

Nickolas P. Geeker, Asst. U. S. Atty., Pensacola, Fla., Clifford L. Davis, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

AINSWORTH, Circuit Judge:

This is an appeal from convictions for controlled substances violations under 21 U.S.C. § 841 and 18 U.S.C. § 2, based on the contention that the District Court erred in denying a motion to suppress fruits of a search of a vessel by customs agents allegedly made pursuant to 19 U.S.C. § 1581(a). Controlled substances (marijuana and barbiturates) were found aboard a houseboat moored at a marina having access to international waters. Don Vallie Williams, Sylvia Trawick Williams, Nicholas Carter Moore and Mildred D. Derrington, occupants of the houseboat, were tried together and found guilty by a jury. Each defendant was sentenced to a short prison term and a term of probation. We hold that the customs agents acted outside their authority under section 1581(a); accordingly, that the motion to suppress the fruits of the search should have been granted, and therefore reverse.

The customs agents testified that while on routine patrol at about 11:30 p.m. on August 19, 1975, they observed a curious-looking vessel moored at the Panama City, Florida, marina. The marina lies about four miles from the open waters of the Gulf of Mexico, to which it is connected by a shipping channel. The vessel was a home-made houseboat on which the Williamses, Moore and Derrington were travelling. An

18–foot motorboat was attached to the back of a 26–foot raft to provide propulsion. The raft bore two plastic domes of sufficient size to serve as living quarters. Florida Statutes 371.021 and 371.041 (1975) require any boat propelled or powered by machinery to be registered with the Department of Natural Resources, and numbered. The motorboat bore registration numbers but the raft did not. The customs agents testified that in the darkness they could not tell that the motorboat and raft were attached, that they could see no registration numbers on the raft, and that they could not tell whether the raft was self-propelled. They decided to board the vessel and contacted their supervisor for additional "back-up" manpower. The supervisor joined them at the marina.

The agents testified that they identified themselves as customs officers and boarded the boat with the consent of Don Williams who was the sole occupant at the time. The agents asked Williams for registration or ownership documents. As the agents inspected the documents by flashlight, one of them noticed a partially burned cigarette in a metal clip lying in an ashtray, in plain view. A field test showed the matter in the cigarette to be marijuana. There followed a search of the raft in which 19.5 grams, or about ⅔ ounce, of marijuana and some barbiturates were found.

The customs agents testified that about 1 a.m., which he estimated was approximately one and one-half hours after they originally boarded the houseboat, they prepared to transport the four defendants to the customs offices, about five miles distant. Don Williams asked that the agents remove the keys from a motor home parked nearby before leaving the marina. The agents asked if the motor home belonged to Williams and when he replied affirmatively, they asked if they could search it. Williams agreed, and the motor home was then searched. The Williamses, Moore and Derrington were arrested and charged with possession and abetting possession of controlled substances. Defense counsel filed a written pretrial motion to suppress the

fruits of the searches of both the houseboat and the motor home. After a suppression hearing at trial the motion to suppress was denied as to the houseboat and maintained as to the motor home. The District Judge ruled that Don Williams, who appeared to the agents to be under the influence of drugs or alcohol, was unable to give knowing or voluntary consent to the search of the motor home.

The defendants contend on appeal that the District Judge erred in his denial of their motion to suppress the fruits of the houseboat search since the customs agents making the search had no authority to board their vessel. At the outset, we note that Williams also lacked capacity knowingly and voluntarily to consent to the entry and search of the houseboat. The District Judge, as we said above, found that Williams was under the influence of alcohol or drugs at the time of the search of the motor home and thus unable knowingly and voluntarily to consent to that search. It follows that Williams was without capacity to consent to the houseboat search which took place about one and one-half hours earlier, during which time Williams ingested no alcohol or drugs according to testimony of customs agents who had him under observation.

The defendants further contend that 19 U.S.C. § 1581(a), which authorizes customs agents to board and search vessels, as judicially construed will not support the entry and search under these circumstances. The Government in its brief on appeal relies wholly upon section 1581(a) to justify the search. The Government brief at pages 3 and 4 reads as follows:

Appellant argues that the entry on the craft was without a warrant and was without probable cause. To this point we have no argument except the assertion that it has no bearing on the search nor of the authority to board granted by Section 1581.

That section provides, in relevant part:

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or with-

in the customs waters . . . and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

The Government contends that because of the proximity of the marina to international waters, the statute supports entry of the vessel to inspect registration papers and ownership documents on a showing of "suspicious circumstances." Further, the Government asserts that the unusual design of the craft and absence of registration number furnished the suspicious circumstances. Once the agents were legally aboard the vessel, the Government argument runs, observation of contraband in plain view raised a reasonable suspicion of the presence of other contraband, justifying a warrantless full search in which an additional small quantity of marijuana and some barbiturate pills were discovered.

 The Government's case cannot stand, however, because the initial boarding of the houseboat was unlawful. The Government seeks to justify the boarding and search of the houseboat under section 1581(a). However, strict application of the literal terms of the section to every vessel would "subvert the Fourth Amendment." *United States v. Jones,* 9 Cir., 1975, 528 F.2d 303, 304. Some boardings and searches pursuant to section 1581(a), not founded on probable cause or even suspicion, are reasonable under the Fourth Amendment. Such boardings and searches are justified by the historical purposes of the customs scheme. Justices Brandeis and Holmes, concurring in *Maul v. United States,* 274 U.S. 501, 529, 47 S.Ct. 735, 745, 71 L.Ed. 1171 (1927), said that the "primary purpose" of the customs search of vessels is to "facilitate, by means of boarding and examination of manifest before arrival in port, both the entry of admittedly innocent vessels and the collection of revenues." We have held that "[f]or the protection of the revenues and national security, the [customs] officers are entitled to search a newly arrived vessel to determine whether goods requiring entry are aboard." *United States v. Ingham,* 5 Cir., 1974, 502 F.2d 1287, 1291.[1]

---

1. In a landmark case involving a customs search on land, in which the constitutionality of customs searches was upheld, the Supreme Court wrote:

> It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. [*Carroll v. United States,* 267 U.S. 132, 153–54, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925).]

Thus, customs searches not founded on suspicion can be reasonable under the Fourth Amendment because they are an element of customs enforcement serving vital, traditional national interests. Not every vessel in American waters is the object of customs scrutiny, however. *See, e. g., United States v. Solmes,* 9 Cir., 1975, 527 F.2d 1370 (bay adjacent to ocean held not functional equivalent of border, thus border search not allowed, where vessel had neither travelled in international waters nor visited a hovering vessel); *United States v. Coppolo,* D.N.J., 1932, 2 F.Supp. 115 (search disallowed when "there was nothing in the appearance of the vessel, or the surrounding circumstances, to indicate that it was violating any United States law," 2 F.Supp. at 116); *United States v. Powers,* E.D.N.Y., 1931, 1 F.Supp. 458 (search disallowed where officers boarded without "having in mind any violation of the Customs or Shipping Law," 1 F.Supp. at 460); *Fish v. Brophy,* S.D.N.Y., 1931, 52 F.2d 198 (search disallowed when officers could show no facts "which would justify a belief that plaintiff's boat, a pleasure craft, was carrying a cargo from a foreign port into the United States," 52 F.2d at 201; the court ruled that "section 581 [predecessor to section 1581(a)] applies only to vessels arriving in or bound for the United States and carrying goods or persons from foreign ports. . . . It is hard to believe that the Legislature intended, in section 581, to place private pleasure boats in

■ In sum, customs enforcement concerns itself with certain vessels presumed to bear persons or cargo subject to customs enforcement procedures. Vessels clearly falling within this class may be searched under section 1581(a) without warrant, probable cause or suspicion. But vessels about which there is no apparent customs concern or suspicion of law violation may not reasonably be searched without warrant or probable cause.

Turning to the facts before us we find that the Government's reliance on section 1581(a) in this case is misplaced. The record does not show that the Williamses' houseboat had entered international waters, indeed, that it was even capable of venturing so far, or that it had contacted any other vessel which had been in international waters. The searching officers had no knowledge of articulable facts which, taken together with logical inferences from those facts, would cause them reasonably to believe that this vessel fell into customs' area

of concern, or that a violation of the law was being committed on board.

■ Similarly, the Government's reliance on *United States v. Lara,* 5 Cir., 1975, 517 F.2d 209, is misplaced. The agents in *Lara* developed reasonable cause to suspect violations of customs or immigration laws prior to stopping the searched vehicle. *United States v. Lara, supra,* 517 F.2d at 210. The Government's brief admits as to this case that "reasonable suspicion or in reality fully fledged probable cause did not arise until after the Customs agents were lawfully on board pursuant to their inspection duties under Section 1581." *Lara* contains no principle of law which would justify boarding, admittedly without suspicion, a small, probably unseaworthy private craft in inland waters such as the houseboat here.

The search therefore cannot be justified under section 1581(a). The Government does not offer any other basis or authority to justify the boarding and search. Under

the same position as vessels importing cargo into the United States." 52 F.2d at 200–01). Numerous vessels ordinarily plying only inland waters have access to and are capable of crossing the border and entering international waters. Congress, recognizing that not all private craft should or could be subjected to customs enforcement, has exempted certain classes of vessels from the basic customs requirements of entry and clearance. Title 19 U.S.C. § 1441 (1970) provides:

The following vessels shall not be required to make entry at the customhouse:

(1) Vessels of war and public vessels employed for the conveyance of letters and dispatches and not permitted by the laws of the nations to which they belong to be employed in the transportation of passengers or merchandise in trade;

(2) Passenger vessels making three trips or oftener a week between a port of the United States and a foreign port, or vessels used exclusively as ferryboats, carrying passengers, baggage, or merchandise: *Provided,* That the master of any such vessel shall be required to report such baggage and merchandise to the appropriate customs officer within twenty-four hours after arrival;

(3) Licensed yachts or undocumented American pleasure vessels not engaged in trade nor in any way violating the customs or navigation laws of the United States and not having visited any hovering vessel: *Provided,* That the master of any such vessel which has

on board any article required by law to be entered shall be required to report such article to the appropriate customs officer within twenty-four hours after arrival.

(4) Vessels arriving in distress or for the purpose of taking on bunker coal, bunker oil, sea stores, or ship's stores and which shall depart within twenty-four hours after arrival without having landed or taken on board any passengers, or any merchandise other than bunker coal, bunker oil, sea stores, or ship's stores: *Provided:* That the master, owner, or agent of such vessel shall report under oath to the appropriate customs officer the hour and date of arrival and departure and the quantity of bunker coal, bunker oil, sea stores, or ship's stores taken on board; and

(5) Tugs enrolled and licensed to engage in the foreign and coasting trade in the northern, northeastern, and northwestern frontiers when towing vessels which are required by law to enter and clear.

At least one circuit has treated section 1441 as creating exceptions to section 1581(a). In *United States v. Nunes,* 1 Cir., 1975, 511 F.2d 871, an aircraft in distress landed in United States territory. A customs search was performed pursuant to section 1581(a), contraband discovered, and the pilot prosecuted and convicted. In reversing the First Circuit wrote, "Section 1441(4) would be meaningless unless it is an exception to the general provisions of section 1581(a)." 511 F.2d at 873.

the circumstances the customs officers lacked authority to board the houseboat. *See United States v. Brennan,* 5 Cir., 1976, 538 F.2d 711. The motion to quash the fruits of the houseboat search should have been sustained.

REVERSED.