360 So.2d 1320 (1978)
STATE of Florida, Appellant,
v.
Raymond RUIZ, Appellee.
No. 78-262.
District Court of Appeal of Florida, Second District.
August 2, 1978.
*1321 Joseph P. D'Alessandro, State's Atty., Louis S. St. Laurent, Chief Asst. State's Atty., and Delano J. Brock, Asst. State's Atty., Naples, for appellant.
David E. Rosendahl of Taylor, Locker & Conley, P.A., Naples, for appellee.
GRIMES, Chief Judge.
Defendant was charged with felony possession of marijuana, cocaine, and amphetamines. The court granted his motion to suppress the drugs except for a bag of marijuana found on the defendant's person during a search incident to his arrest. The state appeals the suppression of the other evidence, and defendant cross-appeals the order denying his motion to suppress the bag of marijuana.
On September 4, 1977, deputies Sisk and Jacobs responded to a complaint from the local Ramada Inn that a nude male was running about the premises and upsetting the guests. The deputies arrived at the motel and were led to the defendant's room. They knocked on the door of the motel room, identified themselves as police officers, and asked for permission to enter the room. The defendant verbally consented to the deputies' entry.
When the deputies entered the room, they found defendant standing in the middle of the room completely naked. A nude female was lying on the bed. Both deputies testified that defendant was quite intoxicated, apparently due to narcotics use. Jacobs asked him for identification. The defendant went to the dresser and began to look for some identification. At this point, Deputy Sisk spied an open attache case on top of the dresser and observed, inside the case, a small vial containing a white powdery substance which Sisk believed to be cocaine.
Both deputies noticed that as defendant searched for his wallet, he was picking up small bits of vegetable matter from the top of the dresser and inserting them in his mouth as if he were eating them. After the defendant handed him some identification, Deputy Jacobs went over to the dresser where he observed the substance which defendant had been picking up and eating. He showed the substance to Sisk, and they agreed that it appeared to be marijuana. Deputy Jacobs then informed defendant that he was under arrest and began to pat him down. The defendant had, immediately *1322 prior to this arrest, put on a pair of shorts, and in searching defendant's person incident to his arrest, Deputy Jacobs discovered a small baggie of marijuana in his pocket.
Deputy Sisk then went to the open attache case on top of the dresser and removed the vial of white powder which he had earlier spotted. Jacobs, in the meantime, picked up a plastic vial from the top of the dresser between the marijuana and the open attache case. This vial contained a small red pill which Jacobs believed to be some sort of narcotic. Jacobs testified that he had first seen the vial with the red pill when the defendant went to the dresser to obtain the identification. Sisk, however, never mentioned the small plastic vial containing the pill at any point during his testimony.
After the defendant was arrested Sisk removed him from the motel and transported him to the county jail in Deputy Jacobs' car. Jacobs remained behind to secure the evidence which they had gathered and to collect the defendant's personal effects in order to deliver them to him upon his release from jail. The motel manager was present when the defendant was arrested. She stated that once defendant was removed from the room and taken to jail she offered to Deputy Jacobs to secure the room with defendant's personal belongings inside. Deputy Jacobs, who at this time was conducting a thorough search of the room, ostensibly looking for defendant's personal belongings, declined the offer and told her that securing the room would be unnecessary. Jacobs then took the defendant's belongings, including his attache case and a pair of tennis shoes, and put them in Deputy Sisk's car and left the motel.
Apparently, Sisk and Jacobs met somewhere away from the jail and exchanged cars. Sisk then proceeded to the jail and took defendant's belongings to the booking office. While on the way to the office carrying both the defendant's belongings and some of his own notebooks, Sisk dropped some items, including the defendant's tennis shoes. As he bent over to retrieve these items, he noticed a shiny object stuffed inside the toe of one of the tennis shoes. He removed the object and discovered a plastic bag containing cocaine. Defendant was eventually charged with the possession of the narcotics seized in the motel room, as well as the bag of cocaine discovered in the toe of his tennis shoe.
On defendant's motion to suppress the court found that the search of defendant's person and the seizure of the contraband found thereon was lawful. However, the court found that the search of the room was an unnecessary search for inventory purposes and suppressed all of the contraband found as a result of that search, including the plastic vial inside the attache case, the marijuana found on the dresser top, and the small plastic vial containing the red pill. The court also suppressed the cocaine in the tennis shoe.
The state argues that the evidence found in the defendant's motel room should not have been suppressed as the result of an unnecessary and unreasonable inventory search. The state argues that the search of the motel room was not an inventory search but that the contraband in question was lawfully seized from within the deputies' plain view. Our review of the record and the testimony of the deputies involved leads us to agree with the state. Both Deputy Sisk and Deputy Jacobs testified that the attache case was open and in plain view on the dresser when they entered the room pursuant to defendant's invitation. The other contraband was also in plain view on the dresser near the attache case. The fact that both deputies may not have observed the contraband at the same time does not diminish the uncontradicted fact that the contraband was open to their inspection. Thus, with regard to these items of contraband, no inventory search actually occurred.[1]
*1323 Defendant, on the other hand, contends that the deputies had no right to be in a position from which they could observe the contraband in question. Defendant suggests that there was no justification for the officers to enter the motel room; they could have requested his presence outside the room. Defendant also notes that he was in such a state of intoxication from the drugs which he had ingested that he could have never knowingly and voluntarily consented to the officers' entry. Thus, his invitation to enter was merely an acquiescence to the officers' apparent authority and intimidating presence, and any contraband discovered was illegally seized as the result of an unlawful entry. See United States v. Williams, 544 F.2d 807 (5th Cir.1977).[2] We disagree. The officers had responded to a legitimate call, and when they arrived at the motel they chose the least offensive place to interview the defendant given his state of undress at the time. Contrary to defendant's implication, the plain view doctrine does not require that an officer's presence at the vantage point from which he observes contraband must be justified by a warrant to search for another object, by hot pursuit, or by a search incident to a lawful arrest. Law enforcement authorities may have many reasons for entering a domicile other than to execute search warrants or to make arrests, and a legitimate reason for his presence unconnected with a search directed against a defendant will suffice to legally place the officer at the vantage point. Cf. Robbins v. McKenzie, 364 F.2d 45 (1st Cir.1966); Davis v. United States, 327 F.2d 301 (9th Cir.1964).
In this case, the deputies were lawfully present for reasons other than conducting a search of the defendant or his belongings when they sighted the contraband in plain view. The deputies had the right to believe that defendant's consent to enter the motel room was knowing and voluntary because they had done nothing to coerce such consent. They both entered the room in full reliance on an invitation extended by one whom they lawfully believed had the right and authority to invite them in. To restrict these deputies from entering premises when lawfully invited by the occupant would be an unwarranted limitation on the discretion of police officers to investigate and deal with situations that do not necessarily involve an arrest for an alleged crime. Thus, the seizure of the contraband found in the attache case and on top of the dresser was justified as a plain view seizure.
The contraband found stuffed into the toe of the defendant's tennis shoe presents a different problem. This was not discovered until after the defendant had been arrested and removed from the motel room. The motel manager had offered to secure the room, but Deputy Jacobs refused. Thus, there is sufficient evidence to support the court's conclusion that there was no need for Deputy Jacobs to thoroughly search the room and collect the defendant's belongings. If, in fact, Deputy Jacobs suspected that the motel room contained more contraband than that which he and Deputy Sisk had earlier found, then there *1324 was no reason why he could not have secured the room and sought a search warrant based upon this knowledge.
The order from which this appeal is taken is reversed to the extent that it suppresses any drugs which were seized in the motel room. In all other particulars, the order is affirmed.
HOBSON and OTT, JJ., concur.
NOTES
[1] The trial court's suppression of the marijuana found on the dresser top is inconsistent with its order denying the suppression of the marijuana found in the defendant's pocket. It is obvious that the probable cause to arrest was provided by the discovery of marijuana in plain view on top of the dresser. Logically, if the marijuana on top of the dresser was discovered pursuant to an unlawful inventory search, then there would have been no probable cause to arrest and the subsequent search of the defendant's person would be illegal.
[2] In Williams, there was a question of the law enforcement officers' (customs agents) authority to even board the defendant's houseboat. In this case, we have determined that the deputies did not abuse their authority by asking to enter the motel room; therefore, Williams is not really analogous to the case sub judice. In addition, in Williams the customs agents' request of the defendant included a request to search the houseboat. Obviously, such a request would raise a question of the defendant's ability to knowingly and voluntarily surrender his constitutionally protected right of privacy. In the instant case, the deputies requested only that they be allowed to enter the room in order to speak with the defendant; no request for a search was ever made. Finally, the Williams decision was predicated upon the district judge's finding that the defendant was under the influence of alcohol or drugs to the extent that he was unable knowingly and voluntarily to consent to the search. In the instant case, the court specifically held that the deputies had a right to enter the motel room upon the defendant's invitation.