**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gerald Randall WHITAKER and**
**Edward Joseph Fitzpatrick,**
**Defendants-Appellants.**

**No. 77–5526.**

United States Court of Appeals,
Fifth Circuit.

April 4, 1979.

---

Sheldon Yavitz, Miami, Fla., for Fitzpatrick and Whitaker.

J. V. Eskenazi, U. S. Atty., David F. Geneson, K. M. Moore, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Appellants Gerald Whitaker and Edward Fitzpatrick appeal their convictions of marijuana importation and possession with intent to distribute.[1] Each complains about the stop and warrantless search of their vessel and a reference at trial to their silence after arrest and receipt of *Miranda* warnings. Fitzpatrick additionally urges that a co-defendant's out-of-court declara-

---

1. A third defendant, Donald Gaetano, was also convicted but has not appealed.

tion was impermissibly used against him and that there is insufficient evidence to sustain his importation conviction. Rejecting the former contentions and finding it unnecessary to reach the latter, we affirm.

## I. *The Stop and Search.*

On December 24, 1976, United States Customs officers patrolling the waters around Miami, Florida, sighted a 42-foot yacht two or three miles off the coast, heading north toward land. As the boat neared Biscayne Channel, the officers noticed that it was "riding low in the water" and making a big bow wake. The boat bore neither name nor home port designation and carried its registration numbers on a sign posted inside a window. Though the latter practice is normal for new boats, it is abnormal for a 15-year old boat such as this. The windows of the yacht were closed, the curtains drawn. Made suspicious by these curious circumstances, the officers radioed a request for a computer check on the boat's numbers. In the meantime, the customs boat followed the yacht into Biscayne Channel, observing that it appeared to be handling sluggishly, another indication of a heavy load. When the computer check turned up four possible "hits" with the name William Lawson, the officers decided to board. They pulled alongside and advised the captain (Whitaker) that they would like to board and check identifi-

cation. One of the officers smelled a strong odor, and another thought he smelled marijuana. When they boarded and requested the registration, Whitaker merely shrugged. After an officer observed marijuana residue on the deck, the cabin door was opened, revealing 9,098 pounds of marijuana.

Appellants argue that the marijuana should have been suppressed as evidence because there had been neither (1) probable cause to stop/search, nor (2) sufficient evidence to make it highly probable that the vessel had come from foreign waters and was thus subject to search under the "functional equivalent of the border" doctrine. We need not address these contentions in light of our recent opinion in *United States v. Freeman,* 579 F.2d 942 (5th Cir. 1978), which ratified an additional basis for this stop.[2] In *Freeman* we reviewed the statutory authority for and fourth amendment reasonableness of the stop and search of a large sailboat off Miami. The boat was first sighted outside the three-mile territorial limit and was intercepted about 2.8 miles from the Florida coast. Recognizing the "substantial distinction between a landlocked vehicle and a nautical vessel" for fourth amendment purposes and the historical latitude accorded in situations involving the latter, we held that 19 U.S.C. § 1581(a) provides constitutional authority for customs officers, even in the absence of "a modicum of suspicion," to stop vessels for document checks in "customs waters."

---

**2.** We note that the recent Supreme Court decision, *Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), does away with the notion of fourth-amendment standing as a separate analytic inquiry. Both appellants would have had "automatic standing" to challenge the search under the superseded precedent. Their standing or, as transmuted by *Rakas,* the preliminary substantive issue of whether each possessed, in the circumstances, an interest which the fourth amendment was designed to protect, went unlitigated below. Because of this procedural posture and because, even under *Rakas,* Whitaker as captain could perhaps assert sufficient protectable interests, we pretermit the *Rakas* inquiry and proceed to a consideration of the legality of the search. We note in passing, however, that the fourth amendment has long been considered applicable to those upon

boats. *See, e. g., Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924); *Arch v. United States,* 13 F.2d 382 (5th Cir. 1926). Since the fourth amendment "protects people, not places," *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), implicit in these cases is recognition that at least some of those aboard vessels may reasonably expect a degree of privacy. Special characteristics of boats, as of autos, have led courts to treat them differently, however, from houses and offices in fourth amendment analyses, *Carroll, supra; Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 567, 38 L.Ed.2d 467 (1974), though we have lately distinguished boats from cars for certain purposes. *United States v. Freeman,* 579 F.2d 942 (5th Cir. 1978); *United States v. Ingham,* 502 F.2d 1287, 1290 (5th Cir. 1974).

The facts of the instant search, however, raise aspects of an issue not addressed in *Freeman*. "Customs waters" are defined in 19 U.S.C. § 1401(j), as to American vessels, as "the waters within four leagues [12 nautical miles] of the coast of the United States." Section 1581(a), on the other hand, purports to grant authority to "board . . any vessel or vehicle *at any place in the United States* or within the customs waters." (emphasis added). Because the *Freeman* stop occurred so clearly within customs waters, there was no need to determine to what degree the fourth amendment may place geographical limitations on stops made pursuant to section 1581(a). On the facts at bar, however, we must determine whether *Freeman* or a more restrictive rule governs stops which occur within the coastline, coastwise of "customs waters." We hold that, at least as to vessels initially sighted within customs waters, the fourth amendment does not prohibit document stops in the absence of suspicion, reasonable suspicion, or probable cause.

We begin our analysis by noting that under *Freeman* the officers could have stopped Whitaker's yacht when it was first sighted out in customs waters, even absent the indicia that reasonably aroused their suspicions. The officers chose instead to exercise their discretion in a more restrained fashion, investigating further by the computer check. By the time these results reached them, the yacht had passed into inland waterways, technically beyond the "customs waters" dealt with in *Freeman*. All of the considerations dictating our finding that the *Freeman* stop was reasonable and thus not prohibited by the fourth amendment remained present, however. The difficulty of policing the ocean frontiers, the impracticality of stopping vessels at a designated point in the water, the brief and routine nature of the detention, and the broad powers historically granted to customs officials—these factors continue to counsel a finding that the officers acted reasonably, and thus constitutionally, in exercising their statutory authority to detain the yacht for a simple document check.

It may be that had the officers initially sighted this vessel on inland waterways which are frequented by many vessels having no apparent customs connections, this balance would have been struck differently.[3] On the facts of this case, however, we need not address this more complex issue. Instead, we simply hold that 19 U.S.C. § 1581(a) provides sufficient and constitutional authority for document checks of vessels sighted in customs waters.

Having determined that the officers had the right to board the yacht and thus the right to be in a position to have a "plain view" of the marijuana residue on the deck, we find that they had probable cause for believing that illegal smuggling was occurring. If exigent circumstances be required,[4] they are present here as well. We think the better view of the automobile line of cases is that they rest on a conclusion that a "diminished expectation of privacy" attends the use of cars. Many of the features identified in *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), as contributing to that lessened expectation apply equally to boats. Large areas of vessels, big and small, are within the plain view of anyone passing

---

**3.** For instance, in *United States v. Williams*, 544 F.2d 807 (5th Cir. 1977), we ruled that, absent warrant or probable cause, an apparently unseaworthy houseboat moored in a marina four miles from the open seas was insufficiently connected with customs concerns for a legitimate boarding and search under § 1581(a). We note in addition that the Ninth Circuit has applied *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), to restrict occasions for § 1581(a) vessel searches. *United States v. Stanley*, 545 F.2d 661, 667 (9th Cir. 1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). *See also United States v. Tilton*, 534 F.2d 1363, 1366 (9th Cir. 1976).

**4.** *See United States v. Fogelman*, 581 F.2d 1167, 1171–72 (5th Cir. 1978) (both probable cause and exigent circumstances required for valid warrantless search of car); *United States v. Weinrich*, 586 F.2d 481, 491–94 (5th Cir. 1978) (upholding boat search upon a finding of probable cause and exigent circumstances).

close by; boats are required to be registered, and various other regulatory and safety restrictions must be obeyed. Boats that venture into customs waters are subject to a boarding for a document check and safety inspection,[5] while any vessel reasonably thought to have come from foreign waters must submit to a full customs search. As with cars, however, persons might have a heightened expectation of privacy as to certain areas of a boat. The living quarters of the crew on an oceangoing tanker, a locked compartment on the bridge of a boat, are possible examples that come to mind. It may be that persons have such a heightened expectation as to personal effects placed in the cabin of a sizeable yacht. Because the record has not been developed along these analytic lines, however, we cannot be sure whether this particular cabin should properly be analogized to closed living quarters or to the more public passenger areas of a car. The undoubted presence of exigent circumstances which at times render valid even searches of areas of relatively great privacy[6] allows us to uphold this search without regard to a thoroughgoing *Chadwick* analysis.

## II. *Testimony about Silence Following* Miranda *Warning.*

In questioning one of the arresting customs officers at trial, the prosecutor inquired whether the defendants had made any statements following *Miranda* warnings. The officer first responded that, "For all practical purposes they made no statements," but then went on to testify about certain statements the defendants had made after receiving their rights. They each had stated that a fourth person on the

boat was only a hitchhiker and was not involved. After direct examination was concluded, defense counsel requested a mistrial, claiming that the testimony violated defendants' fifth amendment privilege against self-incrimination. The trial judge ordered the testimony stricken from the record and gave the jury a cautionary instruction. There was no other reference to silence during trial. On cross-examination, the customs officer even testified about additional statements: Whitaker had said the boat belonged to him and not the Larson whose name turned up in the computer check; Whitaker had also claimed he found the marijuana on an island in the Bahamas.

Though due process forbids the prosecution to use evidence of a defendant's post-arrest, post-*Miranda* warning silence, either for substantive or impeachment purposes, *Doyle v. Ohio,* 426 U.S. 610, 76 S.Ct. 2240, 49 L.Ed.2d 91 (1976), we have found some violations of this principle to be only harmless error. *See, e. g., United States v. Sklaroff,* 552 F.2d 1156 (5th Cir. 1977), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978); *United States v. Davis,* 546 F.2d 583 (5th Cir.), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). In *Sklaroff,* for instance, the witness spontaneously blurted out that the defendant had declined to make a statement after the warnings. Cautionary instructions were given, no further reference to the silence was made, and the evidence of guilt was overwhelming. Our case is similar. Though the witness' reference to silence ·was in response to a prosecutorial question, the prosecutor may well have expected the witness to respond by recounting the statements actually made. The witness'

---

**5.** *United States v. Freeman,* 579 F.2d 942 (5th Cir. 1978). Under *United States v. Odom,* 526 F.2d 339 (5th Cir. 1976), a document check may validly include entry of the hold of a cargo vessel to verify the numbers carved in the main beam.

**6.** See, e. g., *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (warrantless search of house justified because of exigent

circumstances during pursuit of robbery suspect); *United States v. Carter,* 566 F.2d 1265 (5th Cir.), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978) (exigent circumstances may justify entry of a house by an officer with warrant before he has given occupants an opportunity to respond to his notice of authority and purpose).

reference to silence was a misstatement—as became clear in his further testimony. Cautionary instructions were given, and the prosecutor did not "focus on" or "highlight" the reference to silence in any way. *See United States v. Davis, supra.* In view of our finding that the marijuana was properly admitted, the evidence of guilt on at least the possession count was overwhelming. We hold, therefore, that this isolated statement was harmless beyond a reasonable doubt.

■ Appellant Fitzpatrick finally complains about the customs officer's testimony that Whitaker said they found the marijuana on the Bahamas. He argues that, as to him, this evidence is inadmissible hearsay and also, since Whitaker did not take the stand, a violation of his right to confront the witness against him under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). No objection was made at trial, however, and we need not address the issue on appeal because it is relevant to Fitzpatrick's importation conviction only. His sentence on that count is to run concurrently with his sentence on the possession count, his conviction for which is not challenged except as to the fourth amendment and *Doyle* issues addressed above. Exercising our discretion, we decline to reach the merits of the challenge to the importation count.

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, concurring in part II and in the result reached in part I:

I concur in part II of the opinion. However, I find the language in part I unnecessarily expansive and I reach the same result by navigating a straitened channel.

The broad language of the opinion in *United States v. Williams,* 5 Cir. 1977, 544 F.2d 807, is not, as is suggested by the majority, restricted to "an apparently unseaworthy houseboat moored in a marina four miles from the open seas." The court there held that the *boarding* of a vessel "about which there is no apparent customs concern or suspicion of law violation" must be premised on a warrant, or probable cause. "Suspicious circumstances" were found insufficient to justify a document check.

The opinion in *United States v. Freeman,* 5 Cir. 1978, 579 F.2d 942, dealing with the authority of customs officials to board a vessel in customs waters, is equally categorical in its assertion that not even "a modicum of suspicion" is required to justify detention and boarding of a United States vessel under 19 U.S.C. § 1581(a). *Williams* is not mentioned in the later opinion.

Because the language of these cases is inconsistent, although their actual results may be rationalized by pointing to factual differences, we should directly confront the question of their relationship when it becomes unavoidable. Such review is unnecessary here. Even assuming the stringent standards of *Williams* apply, the boarding of the defendants' yacht was justified by probable cause coupled with exigent circumstances once the customs officers pulled alongside and smelled marijuana. The same facts, added to the marijuana residue found in plain view, validated the subsequent search. It is on that basis that I would hold the stop, boarding, and search of the vessel constitutionally permissible, and would affirm the denial of the defendants' motion to suppress.