**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Norman KLEINSCHMIDT and
Michael Andrew Sorrentino,
Defendants-Appellants.**

**No. 78–5427
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 4, 1979.

Rehearing and Rehearing En Banc
Denied July 13, 1979.

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

William L. Rogers, Miami, Fla., for Kleinschmidt.

Steadman S. Stahl, Jr., Hollywood, Fla., for Sorrentino.

Jack V. Eskenazi, U. S. Atty., Caridad P. Matthews, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

PER CURIAM:

In another of the flotilla of cases challenging the actions of customs officials in stopping and searching a vessel off the coast of the United States, the appellants claim that the evidence secured by a search of their ship, BUSINESS STINKS, was obtained in violation of their Fourth Amendment rights and should have been excluded. They also allege that the government adduced insufficient evidence to demonstrate that the substance discovered was marijuana. Appellant Sorrentino claims in addition that his identity was never estab-

lished during trial. Finding none of these contentions worthy of safe harbor, we affirm.

The vessel BUSINESS STINKS was first sighted approximately one mile offshore by a customs officer watching the coastal waters from a naval observation tower at 11:30 p. m. December 30, 1977. The officer notified customs officers patrolling the waters that he had observed a vessel apparently capable of traveling to and from foreign waters not seen to have left port that evening.

Acting on this information, a customs patrol located the vessel and approached her. Customs Patrol Officer Settles testified that he noticed that the vessel was wallowing, as if she bore a heavy load, and that the waterline mark nevertheless appeared normal, suggesting to him that the ship had a false waterline. The cabin area was completely dark and the front windshield of the vessel was covered with canvas. Two men were on the bridge.

As the vessel passed the customs ship, Settles saw its name. BUSINESS STINKS was on a list of suspect vessels given Settles two weeks earlier by his supervisor who had obtained the information from the Fort Lauderdale Police Department.

As a result of their suspicions, the customs agents turned on their blue light and stopped the BUSINESS STINKS. The men on board refused to identify themselves or provide registration papers. Two customs officers therefore boarded the vessel. While Settles proceeded to the bridge to check for registration, Officer Collins went to the cabin. He smelled the odor of marijuana and, upon opening the cabin door, discovered a large number of bales. Settles testified that he also smelled marijuana from his position on the way to the bridge.

Kleinschmidt and Sorrentino, the men on the bridge, were arrested for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. At the bench trial Settles was the sole witness for the government. He identified both appellants to the court by their de-

scriptions, although not by name. No chemist appeared; prior to trial defense counsel and the government stipulated that the chemist's testimony would be that the suspect bales found on board the vessel were marijuana. Both defendants were convicted after the court rejected their motion to suppress.

## I. The Motion to Suppress

The magistrate's report, adopted by the district court, approved the actions of the customs agents either as a border search—premised on reasonable suspicion arising from articulable facts that the BUSINESS STINKS had just crossed the border or had had contact with a foreign vessel—or as an investigatory stop under the standards of *United States v. Brignoni-Ponce*, 1975, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607. Although we cannot agree that, as a matter of law, the customs officials had reason to believe the vessel had a sufficient nexus with the border to justify a border search, we do conclude that there was statutory and constitutional authority for their actions, and the motion to suppress was properly denied.

 Customs officials have the power under 19 U.S.C. § 1581(a) to stop and board vessels in customs waters for a routine documents check even in the absence of a modicum of suspicion. *United States v. Freeman*, 5 Cir. 1978, 579 F.2d 942, 945; *United States v. Whitaker*, 5 Cir. 1979, 592 F.2d 826 (1979). Even if we were to apply to blue water the standards of *Brignoni-Ponce* and *Delaware v. Prouse*, 1979, ——— U.S. ———, ———, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, requiring reasonable suspicion of wrongdoing before automobiles may be subjected to a minimally intrusive investigatory stop, *see United States v. Williams*, 5 Cir. 1979, 589 F.2d 210; *United States v. Williams*, 5 Cir. 1977, 544 F.2d 807, 811, such reasonable suspicion was present in this case.

The vessel approached the coast late at night, and had not been seen leaving port earlier. It was of a type capable of foreign

travel. The customs officials noted that the vessel was wallowing, as if it were heavily loaded, but that the waterline appeared high, suggesting that it had been altered. The cabin was dark, and the windshield covered by canvas. The name of the vessel was on a list of suspect ships furnished customs authorities by the Fort Lauderdale police department. The occupants of the ship refused to respond to questioning when customs officers approached. All these circumstances combined to provide reasonable suspicion of wrongdoing sufficient to justify an investigatory stop and boarding.

■ Once on board, a further search could be constitutionally validated only by the existence of probable cause plus exigent circumstances. *See, e. g., United States v. Cadena*, 5 Cir. 1979, 588 F.2d 100; *United States v. Cortes*, 5 Cir. 1979, 588 F.2d 106, 110; *United States v. Weinrich*, 5 Cir. 1978, 586 F.2d 481, 492–94; *United States v. Freeman, supra*. The odor of marijuana, to which both customs officers testified, provided probable cause for the search. *United States v. Villarreal*, 5 Cir. 1978, 565 F.2d 932, 937. Exigency was created by the inherent mobility of the vessel and the possibility it might escape the single customs vessel detaining it, the limited visibility at the time, and the possibility that the two men were not alone on the vessel or that they might have secret arms aboard, causing danger to the customs agents if the ship were not immediately secured. The trial court, therefore, properly denied the motion to suppress.

## II. Nature of the Substance Found

Although the appellants stipulated at trial that the chemist need not be brought to testify, and "if the chemist were called that he would testify that [the substance found on board] is marijuana," they now contend the evidence was insufficient to prove that marijuana was present.

■ The testimony of witnesses is sufficient to establish the identity of a controlled substance beyond a reasonable doubt. *United States v. Crisp*, 5 Cir. 1977, 563 F.2d 1242, 1244; *United States v. Park*, 5 Cir. 1976, 531 F.2d 754, 763. Appellants have stipulated to the content of that testimony, had it been given. Such a stipulation is binding, *United States v. Cadena*, 5 Cir. 1978, 585 F.2d 1252, 1264; *United States v. Cantu*, 5 Cir. 1975, 510 F.2d 1003, 1004, and it provided sufficient evidence for the court to conclude that the substance was marijuana.

*United States v. Hellman*, 5 Cir. 1977, 560 F.2d 1235 is not to the contrary. We there held that such a stipulation does not eliminate the requirement that a jury be instructed on the essential elements of the offense charged. The case should not be read to imply that stipulations cannot themselves provide sufficient evidence to satisfy those elements. This attack on appellants' convictions is frivolous.

## III. Identification of Sorrentino

■ Both appellants were identified by customs officer Settles by description during the bench trial. Moreover, Sorrentino had been identified by name during the suppression hearing. The trial judge was clearly satisfied that a proper identification had been made for he immediately thereafter adjudged the two defendants guilty by name.

No authority has been cited for the proposition put forward by Sorrentino that identifications must be made by name rather than description. The proposition is patently unsound; it is not essential to conviction that the law violator's true name be known. The procedure followed during trial left no doubt that the individuals identified by Officer Settles were those aboard the BUSINESS STINKS. Under these circumstances, we cannot hold that more was required.

The convictions are AFFIRMED.