388 So.2d 573 (1980)
STATE of Florida, Appellant,
v.
David T. RICHARDS and Richard G. Fifer, Jr., Appellees.
No. 79-102.
District Court of Appeal of Florida, Fourth District.
July 9, 1980.
Rehearing Denied October 8, 1980.
Jim Smith, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellant.
Douglas J. Glaid of Kay, Roderman & Silber, P.A., Fort Lauderdale, for appellees.
GLICKSTEIN, Judge.
This is an appeal by the State from an order of the trial court which suppressed marijuana seized by the United States Coast Guard. The question presented for review is whether the stop and search by the Coast Guard violated the fourth amendment. We reverse.
*574 The record reflects that David T. Richards and Richard G. Fifer were charged with possession of over 100 pounds of cannabis. At approximately 7:10 a.m. on March 17, 1978, appellees were the sole occupants of the 45-foot vessel, Commando II, which entered the inlet from the ocean at Port Everglades, Florida. At that time three United States Coast Guard Petty Officers were on safety patrol at the entrance to the inlet with orders to perform routine safety inspections and to be on the lookout for a 50 foot Hatteras suspected of carrying marijuana. After observing the Commando II enter the port, the officers aboard the Coast Guard cutter instructed the appellees to heave to for routine safety boarding and Petty Officers Weisman and Hill then boarded the vessel. Weisman testified that he undertook obtaining from Fifer the information needed for the Coast Guard boarding form which included the registration and number of the boat, Fifer's driver's license, length of vessel, engine information and safety requirements. With Fifer's cooperation Weisman said he went through the safety requirements of life jackets, sound producing devices, navigation lights, backfire flame arrester and others. After inspecting the life jackets, Weisman asked about the fire extinguishers and was told they were located below in the cabin. Upon entering the cabin, Weisman observed stacked bales covered with a cloth. Weisman recognized the odor in the cabin as marijuana and the vessel was subsequently seized for carrying contraband.
Although Weisman testified that he was making a routine safety inspection of Commando II and had no suspicion that there might be contraband on board, the trial court perceived the real purpose of the stop and boarding of Commando II to be a search for suspected contraband rather than a safety inspection. The trial court accepted Fifer's testimony that before any safety inspection had commenced, Weisman had said that the Coast Guard had been waiting there since 1:00 a.m. for a boat which matched Commando II's description; that they were looking for a boat carrying contraband; and that they had been stopping boats since 1:00 a.m. for that purpose. Fifer testified that when Weisman observed the marijuana he said "It is here," and that one of the petty officers asked if a quick name change of the vessel had been made.
For the purpose of our decision we are assuming, arguendo, that the officers stopped the vessel because they had a prior suspicion that the vessel was carrying contraband. However, we reach a different decision from that reached by the trial court because we believe whatever the officers thought was irrelevant. The relevant inquiry is what did the officers do. The record reflects that the officers (1) stopped and boarded the vessel and (2) conducted a safety inspection during which contraband was observed and subsequently seized.
Under 14 U.S.C. § 89(a) the Coast Guard has been granted the express statutory authority to stop vessels for safety inspections:
The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. (Emphasis added).
Random boarding of boats by the Coast Guard under § 89(a) has been upheld in United States v. Warren, 578 F.2d 1058 (5th Cir.1978).[1] There it was held the boarding need not be founded on any particularized suspicion, and that once having boarded the Coast Guard may conduct documentation and safety inspections. Id. at 1064-65. *575 The similar authority of customs officers under 19 U.S.C. § 1581[2] was recognized in United States v. Freeman, 579 F.2d 942, 946 (5th Cir.1978).[3]
Defendants argue that the real purpose of the stop and boarding was to search for marijuana. The broad authority which the Coast Guard possesses by virtue of Section 89(a) purges the stop and boarding of what the trial court considered to be egregious. In United States v. Hillstrom, 533 F.2d 209 (5th Cir.1976), cert. denied 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), the court held that where the Coast Guard had acted under its statutory authority to make an inspection, and in the course of the inspection discovered marijuana, the fact that there was a prior suspicion of the presence of drugs did not taint the validity of the safety inspection and seizure.
In light of the Coast Guard's responsibility under 14 U.S.C.A. § 89(a) to prevent the violation of United States law, the defendants are entirely unwarranted in their suggestion that prior suspicion of the presence of drugs, or the suggestion by a drug enforcement agency that inspection be made, tainted the validity of the safety and documentation inspection. Id. at 211.
Subjective intent cannot change what would otherwise be a valid stop and entry into an illegal one. What the boarding officers were thinking at the time of the boarding is simply irrelevant. United States v. Willis, 476 F. Supp. 201, 202 (E.D. La. 1979).
Accordingly, we conclude that the detention and boarding of the Commando II was statutorily authorized and constitutionally permissible. We next consider the search which flowed from the initial boarding and request to inspect the vessel's safety equipment.
A review of the evidentiary hearing convinces us that a bona fide safety inspection was conducted by the Coast Guard officers after boarding the Commando II.[4] The officers' presence in the cabin where the marijuana was seized was occasioned by Fifer and Richards' statements as to the location of the fire extinguishers. The plain view observations of the bales and the odor they produced were made by Weisman at a time when he was in a place where he had a right to be. The fact that there was a prior suspicion of the presence of contraband did not taint the validity of the inspection and seizure.
We distinguish the facts of the present case from those in State v. Taylor, 355 So.2d 180 (Fla. 3d DCA 1978), in which the officer exceeded his statutory authority to make a registration check when he automatically conducted a general search. In this instance, Section 89(a) authorized the Coast Guard to stop and board the vessel for safety and registration inspection. The actions of the boarding officers were consistent with a safety inspection. The marijuana was discovered in the course of the inspection and not as a result of an automatic general search.
*576 Accordingly, while we are troubled by the plenary authority given the Coast Guard to stop and board vessels,[5] we consider that the petty officers' actions were consistent with fourth amendment requirements. We therefore reverse the trial court's order and remand the cause for further proceedings consistent herewith.
REVERSED and REMANDED.
BERANEK and HURLEY, JJ., concur.
NOTES
[1] United States v. Warren, 578 F.2d 1058 (5th Cir.1978), upheld the random boarding of American flag vessels located outside the 12-mile limit.
[2] 19 U.S.C. § 1581(a) (1970), is analogous to 14 U.S.C. § 89 (a), and provides:

(a) Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-enforcement area established under sections 1701 and 1703 to 1711 of this title, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.
[3] In United States v. Freeman, 579 F.2d 942, 945, 946 (5th Cir.1978), a case involving customs personnel rather than the Coast Guard, a vessel was intercepted 2.8 miles from the Florida coast. The court held that "under the explicit language of § 1581(a) Customs Officers need not have even a modicum of suspicion to either stop or search vessels in Customs waters."
[4] Appellee Fifer testified that Weisman "went through the motions" of a safety inspection but on cross-examination, confirmed that his driver's license and the vessel's life jackets and registration were checked. He further stated that Weisman may have checked the sound devices and that he told Weisman the fire extinguishers were below.
[5] We are not unmindful that the law of the sea in light of the fourth amendment may be in a state of flux. Prior to the decision in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Fifth Circuit Court of Appeals held in United States v. Freeman, supra n. 3:

[A]s we emphasized in United States v. Ingham, 5 Cir., 1974, 502 F.2d 1287, 1290, cert. denied, 1975, 421 U.S. 911, 95 S.Ct. 1566, 43 L.Ed.2d 777, there is a substantial difference between a landlocked vehicle and a nautical vessel for Fourth Amendment purposes.
Delaware v. Prouse, supra, subsequently invalidated the random stopping of automobiles to check driver's licenses and registration papers in the absence of an articulable and reasonable suspicion that the motorist is unlicensed or the automobile unregistered or that either the automobile or an occupant is otherwise subject to seizure for violation of the law.
Thereafter, in United States v. Kleinschmidt, 596 F.2d 133 (5th Cir.1979), the court suggested the possible application of the standards in Delaware v. Prouse, supra, "to blue water." See also, United States v. Piner, 608 F.2d 358 (9th Cir.1979).